**Joseph T. MYERS, Plaintiff–Appellant,**

v.

**Mitchell L. HOSE, Director of Personnel; Frederick County Board of Commissioners, Defendants–Appellees.**

No. 94–1840.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 30, 1995.

Decided March 29, 1995.

---

280

**ARGUED:** Willie James Mahone, Frederick, MD, for appellant. Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, MD, for appellees.

Before WILKINSON, WILKINS, and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge WILKINS and Judge LUTTIG joined.

## OPINION

WILKINSON, Circuit Judge:

This appeal presents the question whether an employer's duty to reasonably accommodate a disabled employee, who is presently unqualified for the position he holds, includes the obligation to grant the employee an indefinite period of time to correct his disabling condition. We think that such a requirement would contravene the meaning of the phrase "reasonable accommodation," as provided in the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Accordingly, we affirm the judgment of the district court.

I.

Appellant Joseph T. Myers worked as a bus driver for the County of Frederick, Maryland, from 1986 until 1992. He began as a parttime driver and was eventually promoted to full-time status. By all accounts, his tenure as a public transit employee was a distinguished one. Unfortunately, however, Myers has experienced serious health problems almost since the inception of his employment with the County.

Myers suffers from several disabling medical conditions. He has an extensive history of chronic heart disease and hypertension. In 1987, he was hospitalized for approximately ten days due to a heart attack. He was again hospitalized in 1991 for congestive heart failure and unstable angina, at which time he underwent cardiac catherization and coronary angioplasty. In addition, Myers has phlebitis of both legs, for which he has twice been admitted to the hospital. Myers is also diabetic.

Federal regulations issued by the Department of Transportation ("DOT") require commercial drivers who operate vehicles carrying sixteen or more passengers to undergo an initial physical examination and subsequent bi-annual examinations. Under the regulations, the examining physician must certify "[i]n the interest of public safety" that "the driver does not have any physical, mental or organic defect of such a nature as to affect the driver's ability to operate safely a commercial motor vehicle." Federal Motor

Carrier Safety Regulations, 49 C.F.R. § 391.43. The regulations specify that cardiovascular disease, accompanied by known congestive cardiac failure, precludes certification of the examinee. *See id.* § 391.41. Similarly, Frederick County maintains a policy of testing drivers for certain minimum health requirements.

On December 4, 1991, Myers failed both the DOT and the County examinations. The attending physician diagnosed him with heart failure, hypertension, and uncontrolled diabetes. Had Myers failed only the more stringent DOT exam and passed the County physical, he would have been eligible to operate vehicles with a capacity of less than sixteen passengers. This, however, was not the case. Accordingly, the County Personnel Department on February 10, 1992, advised Myers' supervisor that he was unqualified to operate any County vehicle.

Myers met with Michael Stovall, Director of Citizen Services for Frederick County, to review the situation. They discussed whether Myers' diabetes could be controlled. Following the meeting with Stovall, Myers went to the office of Mitchell Hose, the County's Personnel Director. Hose presented Myers with several alternatives: he could resign, he could be dismissed, or, because he had served the requisite number of years with the County, he could retire with benefits. Myers protested that Stovall had promised to grant him time—to exceed his scheduled leave, if need be, and at half his salary—to reduce his blood sugar and thus control his diabetes. Hose evidently rejected this proposal, as Myers opted finally to retire. Myers remained on the County payroll, utilizing his paid sick and annual leave, until March 4, 1992.

Myers thereafter filed suit against Hose and the County Board of Commissioners. He alleged discrimination on the basis of handicap and race as well as wrongful discharge under state common law. The district court granted the defendants' motion for summary judgment on all counts, and Myers appeals from that judgment.

## II.

Myers' major claim is one of handicap discrimination. Section 504 of the Rehabilitation Act of 1973, as amended, provides in pertinent part that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In 1990, Congress extended § 504's prohibitions to private employers in the Americans with Disabilities Act. Pub.L. No. 101–336, 104 Stat. 328 (1990) (codified as amended at 42 U.S.C. §§ 12101–12213). That legislation codified much of the case law and the implementing regulations developed under the Rehabilitation Act. The overlap between the two statutes is substantial: indeed, the ADA specifies that administrative complaints filed under either statute be "dealt with in a manner that avoids duplication of effort and prevents imposition of inconsistent or conflicting standards for the same requirements." 42 U.S.C. § 12117(b); *see Tyndall v. National Educ. Centers,* 31 F.3d 209, 213 n. 1 (4th Cir.1994) (relying in an ADA case on Rehabilitation Act case law). In 1992, in order to clarify the standards governing federally-funded entities, Congress amended § 504 to expressly incorporate the liability standards of the ADA. *See* Rehabilitation Act Amendments of 1992, Pub.L. No. 102–569, § 506, 106 Stat. 4344, 4428 (1992) (codified at 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act....")). Thus, whether suit is filed against a federally-funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same.

The analysis for claims of employment discrimination against the disabled is a straightforward one. To resolve the question whether a person is an "otherwise qualified individual," a court must first consider whether that person is able to perform the essential functions of the job in question.

*School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); *see also* 42 U.S.C. § 12111(8) (codifying essential functions test). If the person is unable to do so, the court must nevertheless determine whether the person could do the job with reasonable accommodation. *Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17; *see also* 42 U.S.C. § 12111(8) (codifying reasonable accommodation requirement). We adhere to this framework in assessing appellant's principal contention that the district court erroneously dismissed his claim of handicap discrimination.[1]

## III.

 It is clear that Myers is unable to perform the essential functions required of a bus driver. The basic function of a bus driver is to operate his motor vehicle in a timely, responsible fashion. It is essential that a driver perform these duties in a way that does not threaten the safety of his passengers or of other motorists. *Strathie v. Department of Transp.*, 716 F.2d 227, 231–32 (3d Cir.1983).

Myers' demonstrated health problems preclude him from satisfying these basic requirements. Because Myers is diabetic, he could lose consciousness if his blood sugar rose above the proper level. *See Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir.1993) (holding as a matter of law that bus drivers with insulin dependent diabetes cannot perform the essential functions of their jobs). Even if Myers were able to control his diabetes, he has also been diagnosed with a severe heart condition and hypertension. In fact, he has been hospitalized for cardiac failure twice in the last eight years. As the examining physician testified, Myers' combined conditions present "a danger of, let us say, a change of consciousness or possibly [a] coma

[or] stroke." Should appellant suffer any such symptoms while behind the wheel, he would be powerless to maintain control over his vehicle. Because this would profoundly compromise the safety of his passengers, pedestrians, and other motorists, Myers is unable to perform his essential duties. *See Chiari v. City of League City*, 920 F.2d 311, 316–17 (5th Cir.1991). It follows that he is not otherwise qualified to fill the position in question. *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements *in spite of* his handicap.") (emphasis added). As the district court aptly noted, "it is not difficult to imagine the public outrage, let alone the potential liability, if plaintiff ... had an accident after suffering a heart attack behind the wheel."

## IV.

 Even though a disabled employee is unable to perform the essential functions of an employment position, his termination may nevertheless be unlawful if the employer has failed to reasonably accommodate the employee's disability. *Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17; *Tyndall*, 31 F.3d at 213.

## A.

 Myers maintains that the County failed to reasonably accommodate his disabling medical conditions by refusing to grant him a period of time in which to cure his disabilities. He sets no temporal limit on the advocated grace period, urging only that he deserves sufficient time to ameliorate his conditions. He adduces medical testimony to the effect that proper diet and medication could bring his blood sugar and hypertension to acceptable levels.[2]

---

1. It is undisputed that Myers' employer, the County transportation agency, is covered under § 504 as a program receiving federal funds; it is similarly agreed that appellant's medical conditions constitute disabilities within the meaning of the Act.

2. Other forms of accommodation do not seem possible. To begin with, the County cannot rea-

sonably be expected to alter the facilities or adjust the specifications of Myers' particular post. The ADA furnishes several examples of reasonable accommodation, such as structural changes to existing facilities, part-time or modified work schedules, and the provision of specialized equipment. *See* 42 U.S.C. § 12111(9); *see also* 45 C.F.R. § 1232.10(b) (Rehabilitation Act regulations listing same). Such standard types of ac-

Myers' argument fails to account for the statutory text. The ADA provides: "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also* 45 C.F.R. § 1232.3(i) ("Qualified handicapped person means ... a handicapped person who, with reasonable accommodation, can perform the essential functions of the job or assignment in question."). Significantly, these provisions contain no reference to an individual's *future* ability to perform the essential functions of his position. To the contrary, they are formulated entirely in the present tense, framing the precise issue as whether an individual "can" (not "will be able to") perform the job with reasonable accommodation. Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.

■ The facts here reinforce this reading of the statute. In mandating only those modifications that qualify as reasonable, Congress clearly meant to avoid placing employers in an untenable business position. *Davis*, 442 U.S. at 412, 99 S.Ct. at 2370; *see also* 42 U.S.C § 12111(10) (defining undue hardship). Myers' requested accommodation, however, would do just that. The County must promptly fill transit positions with qualified drivers lest public vehicles go unmanned; every business day, there are routes to be serviced and passengers to be transported. For the County to be forced to stand by—or hire temporary help—while Myers endeavors to improve his failing health would be a significant burden. We therefore hold that reasonable accommodation does not require the County to wait indefinitely for Myers' medical conditions to be corrected, especially

in light of the uncertainty of cure. *See Fuller v. Frank*, 916 F.2d 558, 562 (9th Cir.1990) (reasonable accommodation does not include duty to await uncertain results of alcoholic employee's treatment program).

Nor do we think that the County was bound by the reasonable accommodation requirement to grant Myers paid leave in excess of his annually scheduled amount. Here, the County appears to have permitted Myers to take his entire paid leave for the year prior to removal from the payroll. Myers nevertheless sought an extension of that time, requesting one-half his salary for the duration of an extended leave. Such a solution is not viable in light of the fiscal exigencies faced by local governments. Like any employer, the County must estimate *ex ante* the amount of paid leave per employee, per annum it can reasonably afford, and then plan its budget on that basis. Requiring paid leave in excess of an employee's scheduled amount would unjustifiably upset the employer's settled budgetary expectations, and thus cannot be considered a reasonable accommodation. *See Fuller*, 916 F.2d at 562 (granting leave without pay for treatment fully satisfies duty of reasonable accommodation). The interpretive guidelines for the ADA reinforce the conclusion that reasonable accommodation does not include unscheduled paid leave. *See* 29 C.F.R. § 1630.2(*o*) (Appendix) ("[O]ther accommodations could include permitting the use of *accrued paid leave* or providing *additional unpaid leave* for necessary treatment ....") (emphasis added).

### B.

■ Myers next points to the Frederick County Personnel Rules, which provide that if an employee's disability "can be corrected, the employee shall be allowed a specified time to have it corrected." Board of County Commissioners, Frederick County, Maryland, Personnel Rules, Chap. VII, § 5 (1987). Stovall, he further claims, promised to give

commodation would be ineffectual in remedying the basic disparities between Myers' medical condition and the legitimate physical criteria for employment as a bus driver. The sole change in

circumstances that would enable Myers to operate public vehicles safely would be a reversal of his medical condition.

him paid leave over and above his annual scheduled amount, as required by the Personnel Rules. *See id.* Chap. X, § 8 ("The County provides ... an extended sick leave benefit that provides payment of one-half the employee's weekly salary for the remaining period of illness up to one year....").

■ Myers' reliance on the County Personnel Rules as proof of the alleged failure to provide reasonable accommodation is misplaced. A particular accommodation is not necessarily reasonable, and thus federally mandated, simply because the County elects to establish it as a matter of policy. While the County is free to exceed the requirements of the ADA in fashioning its policies regarding disabled employees, such policies are not the definitive source of the standard by which reasonable accommodation is measured under federal law. Indeed they cannot be, as state and municipal legislative bodies lack authority to prescribe the content of federal law, absent incorporation of state law in the federal statute. *See generally Smith v. United States,* 431 U.S. 291, 301–04, 97 S.Ct. 1756, 1764–66, 52 L.Ed.2d 324 (1977).

We illustrate the point by reference to another section of the County Personnel Rules. In addition to providing for the correction period here in dispute, the Rules also require a disabled employee's supervisor to "attempt to place the employee in another position which he/she can perform." Chap. VII, § 5. This circuit has made it clear, however, that the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position. *See Guillot v. Garrett,* 970 F.2d 1320, 1326 (4th Cir.1992). The County's alternative placement provision does not, therefore, reflect a national rule of reasonable accommodation.

### C.

■ Myers argues finally that similarly situated County employees were accommodated in ways that he was not. He points in particular to three disabled County drivers who he claims were granted alternative employment or time to remedy their disabilities.

■ There are several flaws in plaintiff's argument. First, as used in civil rights law, the notion of "similarity" generally involves a comparison between a protected class that is subject to disparate treatment and another class of persons. *See e.g., Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (comparing salary of black personnel to higher salary of similarly situated whites). The point of such comparisons is this: because the classes are similarly situated in most relevant respects except their protected status (*e.g.,* gender or race), there arises a rational inference of discrimination on the basis of that status. Myers' argument misses this point, however. Here, the analogy is inapposite because *all* employees to whom Myers compares himself are *also* disabled. Thus, this set of circumstances gives rise to no logical inference of handicap discrimination.

Second, the fact that certain accommodations may have been offered by the County to some employees as a matter of good faith does not mean that they must be extended to Myers as a matter of law. *See Traynor v. Turnage,* 485 U.S. 535, 549, 108 S.Ct. 1372, 1384, 99 L.Ed.2d 618 (1988) ("There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons."). Moreover, such a regime would discourage employers from treating disabled employees in a spirit that exceeds the mandates of federal law. If an employer undertook extraordinary treatment in one case, the same level of accommodation would be legally required of it in all subsequent cases; in other words, a good deed would effectively ratchet up liability, and thus not go unpunished. *See Vande Zande v. Wisconsin Dep't of Admin.,* 44 F.3d 538, 545 (7th Cir.1995). Discouraging discretionary accommodations would undermine Congress' stated purpose of eradicating discrimination against disabled persons. *See* 42 U.S.C. § 12101(b). Accordingly, we do not accept the proposition that Myers is *ipso facto* entitled to the precise accommodations afforded other disabled County employees.

Finally, it is doubtful that Myers and the three employees to whom he refers were in fact similarly situated. The employees differed from Myers in one critical respect: each of them passed the County physical examination, whereas he failed it. In each case, successful completion of the County exam explains the treatment the other employees received. The first employee, who was diabetic, never drove any high-occupancy vehicles and thus was not subject to the DOT requirements. Because he passed the County test, however, he was permitted to operate low-occupancy vehicles. While the second diabetic employee initially failed the County and DOT tests, she was removed from service as a bus driver as soon as these facts came to the County's attention. She subsequently passed both tests, and only then was she rehired as a driver. As for the third employee, who suffered from epilepsy, she was allowed to continue her employment as a dispatcher and driving trainer because she passed the County exam. Although she was not certified under the DOT exam, her positions were not subject to that requirement. In sum, we find no reason to believe that the County discriminated against Myers on the basis of his disabilities.[3]

## V.

The judgment of the district court is hereby

*AFFIRMED.*

---

**3.** We also reject appellant's assertions that the district court improperly granted summary judgment on his claims of racial discrimination under 42 U.S.C. §§ 1981, 1983, and the Maryland Declaration of Rights, and wrongful discharge. As the district court correctly found, the record is devoid of any evidence that appellant was terminated on the basis of race. The district court also was correct to hold that sovereign immunity shields the defendants from the wrongful discharge claim. *See Katz v. Washington Suburban Sanitary Comm'n,* 284 Md. 503, 397 A.2d 1027 (1979).