**Richard J. SCHLAPIA, Plaintiff,**

v.

**William DALEY, Secretary Department of Commerce, Defendant.**

**Civil No. AW–96–904.**

United States District Court,
D. Maryland.

March 28, 1997.

---

Steven J. Silverberg, Washington, DC, for Plaintiff.

S. Hollis Fleischer and Charles J. Peters, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Presently pending before the Court for consideration is Defendant's Motion for Summary Judgment. Plaintiff has filed a response to which Defendant has replied. Additionally, the Court held a hearing in this matter on March 25, 1997. After considering the entire file and listening carefully to the oral arguments presented at the hearing, the Court finds that Defendant's Motion for Summary Judgment will be granted.

## I. BACKGROUND

The following facts are undisputed. Plaintiff Richard J. Schlapia began employment with defendant Department of Commerce on August 13, 1990. Plaintiff's Mem. Opp'n Summ. J. at 3–4; Defendant's Mem. Supp. Summ. J. at 2. Plaintiff worked in Defendant's Radio Frequency Management Division ("RFMD") as an Electronic Engineer,

GS–0855–13.[1] Compl. at ¶ 7. There were three additional employees in RFMD, including Plaintiff's first-line supervisor, Richard Barth ("Barth"). Plaintiff's Mem. Opp'n Summ. J. at 2.

At the age of four, Plaintiff was diagnosed with non-paralytic polio. Defendant's Mem. Supp. Summ. J. at Ex. 14. The polio, in addition to a number of related surgeries, and the start of arthritis caused Plaintiff to suffer from chronic pain in his legs. Consequently, these infirmities affected his ability to walk. Compl. at ¶ 8; Defendant's Mem. Supp. Summ. J. at Ex. 14.

At the time of the incident in question, Plaintiff was commuting from his home in Southwest Washington, D.C. to RFMD's office in Suitland, Maryland ("Suitland").[2] Compl. at ¶ 9. The extent of Plaintiff's one-way travel consisted of two bus rides, some standing while waiting for the buses, walking approximately six blocks, and climbing three flights of stairs upon arrival at his office.[3] Defendant's Mem. Opp'n Summ. J. at Ex. 10. As a result of Plaintiff's commute, he endured excessive pain in his legs and physical exhaustion. Plaintiff's Depo. at 22–24; Defendant's Mem. Supp. Summ. J. at Ex. 10. Additionally, Plaintiff's commute forced him to use his sick leave at the end of the week so that he could have a day of rest. Plaintiff's Depo. at 23.

Although Plaintiff had numerous conversations with Barth about the physical impact of his commute, Plaintiff did not formally request Defendant to take any action until his letter of November 10, 1994. Plaintiff's Depo. at 22–25; Defendant's Mem. Supp. Summ. J. at 5. In his memorandum, addressed to Barth, Plaintiff stated:

> I write this memorandum to formally request a change in work location due to the continuing impact of commuting to Suitland, MD on my physical health. . . . A relocation to an office in downtown DC [sic], in Silver Spring, or some other location with a less physically demanding commute and better access to public transportation would offer much physical relief to my condition.

Defendant's Mem. Supp. Summ. J. at Ex. 10.

Barth presented Plaintiff's request to his supervisor, John Hussey ("Hussey"). At the same time, Barth suggested to Hussey that the entire office of RFMD, not just Plaintiff, be moved to Silver Spring, Maryland ("Silver Spring"). Hussey Depo. at 53; Barth Depo. at 54–55. However, Hussey was not in agreement with the whole office moving. Hussey Depo. at 70; Barth Depo. at 55–56. One of Hussey's reasons for not wanting the entire division to relocate to Silver Spring was based on potential management oversight problems. Hussey Depo. at 70; Barth Depo. at 56. Instead, Hussey extended a written offer, through Barth, to move only Plaintiff to Silver Spring. In the letter to Barth, dated January 25, 1995, Hussey stated:

> I discussed this request from Mr. Schlapia with you soon after you received it in November. At that time I stated that I would be willing to arrange accommodations for Mr. Schlapia at the NOAA complex in Silver Spring, which he stated would be more amenable to his physical condition. I have also discussed this offer with Helen Powell of the NOAA Office of Labor Relations on January 18, 1995. Ms. Powell indicated that she thought this was a reasonable accommodation for Schlapia's

---

1. RFMD is a Division of the Office of Systems Development ("OSD"). OSD is an office of the National Environmental Satellite Data and Information Services ("NESDIS"). NESDIS is one of five major organizational parts of the National Oceanic and Atmospheric Administration ("NOAA"), which is a component of Defendant.

2. At the time of Plaintiff's interview, RFMD was located in Washington, D.C. and Plaintiff resided in Vienna, Virginia. Plaintiff was told that the office would be relocating to Suitland. Defendant moved to Suitland before Plaintiff commenced his employment. After commuting from Vienna to Suitland for a period of time, Plaintiff moved to Southwest Washington, D.C. to make his commute easier. Plaintiff's Depo. at 15.

3. Once Plaintiff arrived at his building, he could have opted to take the elevator to his office. However, he would have had to walk an additional half of a block to get to the entrance where the elevator was located. Once Plaintiff reached the third floor, he would have had to walk the length of the building in order to get to his office. Defendant's Mem. Opp'n Summ. J. at Ex. 10.

condition.... I believe that suitable arrangements, including appropriate office support systems, can be established within [RFMD] that will enable Mr. Schlapia to work productively at the Silver Spring location.

Defendant's Mem. Supp. Summ. J. at Ex. 11.

Plaintiff rejected Hussey's offer. In a written memorandum, dated February 7, 1995, he replied:

I do not agree that your proposal constitutes reasonable accommodation. The proposed offer of a separate office for me in Silver Spring adds an additional location to an already arduous commute. My job involves working with a voluminous amount of classified and unclassified data and documents, the access to which I share with Richard Barth and my other co-workers. I would still need to make regular visits to Suitland to share data and documents.... Moving me alone to Silver Spring would dilute my effectiveness as an employee in NOAA, and much work would be duplicated....

Defendant's Mem. Supp. Summ. J. at Ex. 12.

Additionally, in an attached writing to Hussey, Plaintiff cited other reasons why he believed that Hussey's offer was not a reasonable accommodation. Plaintiff pointed out that he and Barth attended many meetings which required them to bring a great number of documents to those meetings. *Id.* Moreover, Plaintiff stated that the distribution of those documents to him and Barth was close in time with those meetings. *Id.* As a result, Plaintiff claimed that he might be faced with a situation where the documents were in one place and he was in another because of the tight distribution schedule. *Id.* Also, Plaintiff stated that he and Barth frequently attended unexpected meetings for each other. *Id.*

On April 26, 1995, Plaintiff filed a formal complaint of discrimination with Defendant's Office of Civil Rights ("OCR"). OCR issued a Final Decision finding the following: (1) Defendant's offer of accommodation was reasonable; and (2) Defendant's refusal to relocate the entire RFMD was not discriminatory based on Plaintiff's handicap. Subsequently, Plaintiff filed the instant action with this Court on March 25, 1996. Plaintiff alleges that Defendant violated 29 U.S.C. § 501 of the Rehabilitation Act of 1973, as amended, by failing to offer him a reasonable accommodation. However, Plaintiff does not allege a disparate treatment claim against Defendant.

## II. SUMMARY JUDGMENT

Summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The movant must demonstrate that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). While the Court views the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), the mere existence of a "scintilla of evidence" is not enough to frustrate the motion. To defeat it, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## III. DISCUSSION [4]

In order to make out a claim under the Rehabilitation Act of 1973 ("the Act"), 29 U.S.C. § 701 *et seq.*, a plaintiff must show that: (1) he or she is "handicapped"; and (2) he or she is "qualified" for his or her position. *Johnson v. Sullivan*, 764 F.Supp. 1053, 1064–65 (D.Md.1991). In this case, it is un-

---

4. The Court will refrain from addressing Defendant's initial contention that it was not obligated to accommodate Plaintiff with respect to his commute. As discussed in detail, *infra*, it is undisputed that: (1) Plaintiff is a qualified individual with a handicap; and (2) Defendant offered to accommodate Plaintiff as a result of his handicap. Thus, the Court believes the real issue is whether the offered accommodation was "reasonable."

disputed that Plaintiff's condition renders him "handicapped."[5] Additionally, both sides agree that Plaintiff is "qualified" for his position.[6] Therefore, the Court finds that Plaintiff is a "qualified individual with a handicap" under the Act.

■ Once it has been established that a plaintiff is a qualified handicapped individual under the Act, his or her employer must provide reasonable accommodation to the known disability as long as the accommodation would not impose an undue hardship on the employer. *Id.* at 1065; 29 C.F.R. § 1614.203(c)(1). The onus is on the employer to show that it provided reasonable accommodation or that it was unable to accommodate the employee. *Johnson,* 764 F.Supp. at 1065. Because Defendant did offer Plaintiff an accommodation, the pivotal question before this Court is whether that accommodation was "reasonable." Indeed, Defendant is entitled to summary judgment if it can show that there is no genuine dispute of fact as to whether it offered a "reasonable" accommodation to Plaintiff. *See Johnson,* 764 F.Supp. at 1065.

■ Using the definition of "reasonable accommodation" under the Americans with Disabilities Act of 1990 ("ADA"), the court in *Bryant v. Better Business Bureau of Greater Maryland Inc.,* 923 F.Supp. 720 (D.Md.1996), formulated a workable standard in determining whether an accommodation was reasonable.[7] This court adopts that standard.[8]

Thus, in focusing on the issue of whether Defendant's offer of accommodation was "reasonable," the Court must consider whether the accommodation: "(1) would be 'effective,' i.e., would it address the job-related difficulties presented by the employee's disability; and (2) would allow the employee to attain an 'equal' level of achievement, opportunity and participation, that a non-disabled individual in the same position would be able to achieve." *Bryant,* 923 F.Supp. at 736 (citations omitted).

■ After evaluating the accommodation that Defendant offered Plaintiff, the Court believes that it was "reasonable." In his letter of November 10, 1994, Plaintiff requested that he be moved to downtown D.C., Silver Spring, or "some other location with a less physically demanding commute and better access to public transportation." Nowhere in this letter did Plaintiff request that his entire office be relocated. After receiving Plaintiff's request and discussing it with NOAA's Labor Relations Office, Defendant eventually offered to fulfill Plaintiff's request by moving him alone to Silver Spring. Moreover, Defendant stated that "suitable arrangements, including appropriate office support systems, can be established within [RFMD] that [would] enable [Plaintiff] to work productively at the Silver Spring location." The Court believes that Defendant's offer to move Plaintiff to Silver Spring would have done the following: (1) provided Plain-

---

5. Under the Act, an individual with a "handicap" is "one who: (i)[h]as a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii)[h]as a record of such an impairment; or (iii)[i]s regarded as having such an impairment." 29 C.F.R. § 1614.203(a)(1). A major life activity is "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at § 1614.203(a)(3). In this case, Plaintiff has non-paralytic polio which affects his ability to walk.

6. The Act states that a "qualified" individual is one with a handicap who "with or without reasonable accommodation, can perform the essential functions of the position in question...." There is no issue as to whether Plaintiff can perform the essential functions of his job.

7. In pertinent part, the ADA defines a reasonable accommodation as:

(ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or

(iii) Modifications or adjustments that enable a[n] ... employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(*o*)(1)(ii)-(iii).

8. Although *Bryant* involved a claim under the ADA, the Fourth Circuit has stated that the substantive standards for determining liability under the ADA and the Rehabilitation Act are no different. *Myers v. Hose,* 50 F.3d 278, 281 (4th Cir. 1995).

tiff with the accommodation that he requested;[9] and (2) made Plaintiff's commute to work less strenuous, which in turn would have more than likely resolved his problem.[10] Consequently, Defendant's offer would have been effective.

Additionally, the Court is not convinced that Plaintiff's move, alone, to Silver Spring would have caused Plaintiff to attain an "unequal" level of achievement, opportunity, and participation when compared to his non-disabled co-workers with similar skills and abilities. First, the Court agrees that such a move may have caused some inconveniences to Plaintiff and the other members of the office. However, those possible inconveniences would not have kept Plaintiff from completing his assigned tasks. Indeed, Plaintiff and Barth conceded that Plaintiff could still get his job done, albeit, under sometimes burdensome and less efficient circumstances. Plaintiff's Depo. at 100–105, 174–177; Barth's Depo. at 101–116.

Second, in its offer of accommodation, Defendant assured Plaintiff that it would put "suitable arrangements, including appropriate office support systems" in place so that Plaintiff could work productively at the Silver Spring location. Although Plaintiff argued that Defendant failed to explain what it meant by "suitable arrangements," this is insufficient to show that Defendant's offer of accommodation was unreasonable. Once Defendant had given its word to Plaintiff that "suitable arrangements" would be instituted, the onus was on Defendant to do just that. In this day of modern technology, the appropriate measures (such as telephone conference calls and video conferences via computer) could have been put into place so that Plaintiff could have had an "equal" level of participation with his co-workers and the same work-related opportunities as other members of his office. Plaintiff's alleged

worry that Defendant would not put certain security measures in place to protect the exposure of classified documents, such as a secured facsimile machine, telephone line, copier, and courier system, was premature. Indeed, Barth admitted that Defendant's courier service was already authorized to carry confidential and secret documents between the Silver Spring and Suitland locations. Barth's Depo. at 113. As a result, the Court believes that Defendant's offer of accommodation would have permitted Plaintiff to continue to perform the essential functions of his job. Unfortunately, Plaintiff never gave Defendant the chance to implement it.

█ Finally, the Court does not believe that Plaintiff and Barth's mere opinion that moving the entire RFMD was a better solution, together with Defendant's refusal to implement their idea, makes Defendant's offer of accommodation unreasonable. As long as Defendant's offer of accommodation is found to be reasonable, Defendant is not obligated to provide Plaintiff with the perfect or exact accommodation that he requested. *E.E.O.C. v. Newport News Shipbuilding & Drydock Co.*, 949 F.Supp. 403, 408 (E.D.Va. 1996).

Based on the above, the Court finds that as a matter of law, Defendant's offer of accommodation was reasonable. As a result, Plaintiff's claim that Defendant failed to reasonably accommodate him is without merit.[11]

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment will be granted. An Order in accordance with this Opinion will follow.

### ORDER

Upon consideration of Defendant's Motion for Summary Judgment, together with Plain-

---

9. Plaintiff claimed that the reason why he requested Defendant to move only him was because he assumed that Defendant knew that the whole office had to stay together. This assumption was allegedly based on conversations that took place between him and Barth. The Court believes, however, that Plaintiff's mere assumption is not enough to withstand his actual request—to move him alone.

10. Indeed, now that Plaintiff is traveling from his home to Silver Spring, he has admitted that his commute is less arduous.

11. Because of this finding, the Court will not consider whether Barth and Plaintiff's second proposed accommodation (to move the entire RFMD) was reasonable and if it would have imposed undue hardship on Defendant.

tiff's Response and the underlying record, and the reasons set forth in the foregoing Memorandum Opinion, IT IS this 28 day of March, 1997 **ORDERED**:

1. That Defendant's Motion for Summary Judgment as to Plaintiff's Complaint BE, and the same hereby IS, **GRANTED**; and

2. That this case is **CLOSED**; and

3. That the Clerk of the Court mail copies of the Memorandum Opinion and this Order to all counsel of record.