983 A.2d 531

**Glenn HAWKINS**

v.

**ROCKVILLE PRINTING & GRAPHICS, INC., et al.**

**No. 2138, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Nov. 24, 2009.

Bruce M. Bender (Andrew N. Sindler, Axelson, Williamowsky, on brief), Rockville, for Appellant.

Andrew S. Cabana (Michael N. Petkovich, Jackson Lewis, LLP, on brief), Vienna, VA, for Appellee.

Panel: DAVIS, EYLER, DEBORAH S., KENNEY, JAMES A., III (retired, specially assigned), JJ.

KENNEY, J.

Appellant, Glenn Hawkins, brought suit in the Circuit Court for Montgomery County against appellees, Rockville Printing & Graphics, Inc. ("RPG"), and Rockville Color, LLC ("RC"), for violating the Montgomery County Human Rights Act ("MCHRA") and Perceived Disability provision of the Mont-

gomery County Code ("MCC"). Hawkins appeals the grant of summary judgment in favor of RPG and RC, presenting two questions for our review, which we have rephrased to conform to the argument presented in his brief:

I. Did the trial court err in granting RC's motion for summary judgment on the issue of whether Hawkins was a qualified individual with a disability under the MCHRA since there was a disputed material fact of whether he was able to work? [1]

II. Did the trial court err in granting RC's motion for summary judgment on Hawkins' claim for discriminatory/retaliatory failure to hire when there was a disputed fact as to whether he sought to make an application for employment?

For the reasons set forth below, we shall reverse the grant of summary judgment as to Count IV of Hawkins' Amended Complaint on the claim of Discrimination/Retaliation for Failure to Hire against RC, and remand to the Circuit Court for Montgomery County for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Hawkins, employed by RPG as a pressman for approximately twenty years, underwent lower back surgery in August 2003. When he returned to work in March 2004, he was medically "restricted from operating heavy machinery." As a

---

**1.** *Hawkins* asked:

Did the trial court legally err in granting [RPG]'s motion for summary judgment on the issue of whether [Hawkins] was a qualified individual with a disability under the [MCHRA] since there was a disputed fact [as to] whether Hawkins was abl[e] to work?

His substantive argument, however, addresses only his attempt to work for RC. Therefore, we will address Hawkins' status as a "qualified individual" as it relates to the grant of summary judgment in favor of RC. *See* Rule 8–504(a)(7) (An appellate brief must contain argument in support of the party's position.). We note that, because RPG terminated all of its employees when it went out of business, the circuit court's determination that Hawkins' termination by RPG was not solely based on a discriminatory purpose was supported by undisputed facts in the record.

result, RPG placed him in a light duty position, which he claims, and RPG disputes, was a managerial position.

Hawkins states that RPG required him to return to full duty as a pressman again beginning in early 2005 through late June 2005. By letter dated June 21, 2005, Hawkins' attorney advised RPG that "Hawkins has a severe medical disability in his lower back such that he is precluded from operating heavy machinery," and requested that RPG reasonably accommodate his disability.

From September 2005 through July 2006, RPG states that it "provided [Hawkins] with part-time work, because [it] had only a limited amount of non-lifting duties that [Hawkins] was medically cleared to perform."

On May 24, 2006, Hawkins filed a Complaint of Alleged Discrimination In Employment with the Montgomery County Office of Human Rights ("MCOHR"), alleging that RPG had discriminated against him by failing to accommodate his disability limitations. On August 16, 2006, Hawkins filed another Complaint of Alleged Discrimination In Employment with MCOHR against RPG, in which he stated:

> The retaliation increased dramatically after I filed a formal charge of discrimination with the Office of Human Rights. Since early July 2006 I have only been allowed to work two to three hours per week and some weeks no hours at all.

> I believe that I have been retaliated against and constructively discharged as a direct result of my original claim of disability discrimination and retaliation.

RPG states that "August 22, 2006, was the last time [Hawkins] came to work for [it]." Hawkins states that he "continued to work with sporadic part-time hours" until August 31, 2006.

Hawkins provided a note dated August 24, 2006, to RPG, in which his doctor recommended that he "remain out of work until he is seen by his physician on Monday, August 28th. At

this time [the doctor] will re-evaluate Mr. Hawkins' ability to go back to work."

Hawkins states that, on August 28, 2006, his doctor placed him "off work on a temporary basis mostly because of the psychological stress that [he] was suffering from [his] employer." He provided a second doctor's note, dated August 28, 2006, to RPG, that stated that he was seen for "multiple medical and psychological problems" and that he was "advised to remain off work for an indefinite period." Hawkins was "hospitalized for four days because of pancreatic problem and was released from the hospital [on] September 3, 2006."

According to Hawkins, "his off-work status was temporary and he was instructed to return to work when he felt he was reasonably able to do so." He states that he was "able to work in or around early September, 2006."

By letter dated August 30, 2006, RPG notified all of its employees that it was selling its assets. It stated, in pertinent part:

All of the employees of [RPG] will be released from employment as of midnight on the date of closing of the sale. I expect the sale to close on Thursday August 31st. . . . .

The new company, [RC], will be considering applications of employment from [RPG] employees, and will be making any hiring decisions in its own discretion. [RC] has asked us to make their employment applications available to [RPG] employees. If you have not already received an application, one can be obtained from Ken Kallon in Accounting. It is my understanding that anyone who is hired by [RC] will retain their current rate of pay, vacation allowance, start date and tenure with the new company. However, you should confirm all terms of employment with [RC]. All employee forms must be completely filled out and turned in, in order to be considered for employment at [RC]. Please make sure to meet with Bob Wapasnick [sic] prior to starting work on Friday September 1st, 2006.

The sale did close on August 31, 2006, and RPG terminated all of its employees and went out of business. In his affidavit,

filed in support of his opposition to summary judgment, Hawkins stated:

I was informed shortly after [August 31, 2006] that [RPG] was selling its business to a new company called [RC] and that all employees of [RPG] were being terminated but would be automatically rehired by [RC]. In fact, I have been informed that all employees were handed a new application to fill out just before August 31, 2006 to become employees of [RC]. One of my friends, Frederico Rosales, asked for a job application for me because I was in the hospital at the time. Mr. Rosales told me that they refused to give him an application for employment for me to apply to [RC].

On or about September 5, 2006, I called my old manager, Rick Wirth who was then an employee of [RC] to ask about being rehired for [RC]. [RC] was operating its business and had purchased the business of [RPG] at the time I talked to him. He told me that "we are under new management and you are not allowed back here." He also said that Mr. Ken Kallon, the former human resources manager for [RPG], who took a similar position with [RC], would call me to give me further details.

Mr. Kallon never called me so I called him on September 7, 2006. He was employed by [RC] at the time I called him and the new company was operating. I asked if I could apply for work just like all of the other employees who were being rehired. He said to me, "there is no need to apply Glen, you do not understand." I said thank you and hung up the phone.

On October 16, 2006, Hawkins filed a Second Amended Charge of Discrimination with MCOHR, adding RC as a respondent but not otherwise altering his original two claims. He also filed a supporting Statement of Discrimination specifically against RC, which stated:

I Glenn Hawkins believe that I have been discriminated against and retaliated against by [RC]. This company merged with my former employer, [RPG], recently. At the time of the merger, all employees were terminated by the

old employer but told they could fill out an application for employment and would be re-employed by the new entity. However, I was singled out and told that I could not fill out a new application and should not bother re-applying by the Human Resources Dept. I believe that this is further evidence of discrimination and retaliation by both my old employer, [RPG], and my new employer.

Peter Mitchell, assigned by MCOHR as the Investigator of Hawkins' claims, served the Amended Charges and Statement on RC's counsel on October 19, 2006.

Thomas Daly, President of RPG, stated in his affidavit that, on or about January 12, 2007, MCOHR notified RPG that it had terminated its investigation of all of Hawkins' charges, and that on February 8, 2008, the Equal Employment Opportunity Commission notified RPG that it had adopted the findings of MCOHR and closed its investigation of those charges.

Hawkins filed a Complaint in the Circuit Court for Montgomery County against RPG and RC on March 1, 2007, alleging that RPG and RC violated the MCHRA and the Perceived Disability provision of the MCC by denying him a reasonable accommodation, denying him full-time light duty employment, and eventually terminating him as a result of his disability. He also alleged that RPG and RC retaliated against him for seeking a reasonable accommodation for his disability and for filing several complaints with MCOHR by refusing to transfer him back to a managerial position, forcing him to work in a very limited part-time position, and eventually terminating him. He demanded a jury trial.

RC filed a motion to dismiss for misjoinder or, in the alternative, a motion for summary judgment, on April 16, 2007.[2] RC asserted that it had never employed Hawkins, had

---

2. RC moved for misjoinder arguing that, as RC had never employed Hawkins, RC could not be liable in a suit for the alleged discriminatory termination of Hawkins employment by RPG, and was therefore wrongfully joined as a party to the suit. Hawkins did not allege the count of discriminatory failure to hire against RC in his first complaint.

never terminated him, had never failed to accommodate him, and had never retaliated against him in any way. It also asserted that Hawkins had never filed a sworn charge against it. In response, Hawkins filed an Amended Complaint on May 18, 2007, designating the original three counts as against RPG, and adding a fourth count of Discrimination/Retaliation—Failure to Hire against RC. In this count, he asserted that he was "discriminated against because of his disability and retaliated against by [RC]'s failure to hire him." He stated that, though all employees of RPG were allowed to apply to RC, he was "singled out and told that he would not be a[sic] allowed to fill out a new application and should not bother reapplying with [RC] and that his termination was final." He also stated that "[a]ll other previous employees of [RPG] were rehired by [RC] but [he] was not rehired, with no justification thereto, despite making inquiries."

On May 18, 2007, Hawkins filed a response and a memorandum in support of his opposition to RC's motion to dismiss for misjoinder or, in the alternative, summary judgment, and requested a hearing. He asserts, in his opposition, that "[his] claim against [RC] for retaliation and discrimination is sufficient enough to stand on its own," and that "[t]here are many other material facts in dispute which will require exhaustive discovery to reconcile, as is allowed and contemplated under the Maryland Rules when a Motion for Summary Judgment is filed."

RPG filed a motion to dismiss or, in the alternative, motion for summary judgment on counts I, II, and III of the amended complaint, and a memorandum in support of the motion, on June 6, 2007. RPG asserted that "layoffs are a legitimate, nondiscriminatory reason for termination" and that it "is undisputed that [RPG] laid off all its employees because it sold its assets and went out of business." Therefore, RPG argued, "[it] had a legitimate nondiscriminatory reason to lay off [Hawkins] . . ."

RC filed a Motion to Dismiss For Failure To State A Claim Or In The Alternative Motion For Summary Judgment On

Count IV Of The Amended Complaint, and a memorandum in support of its motion, on June 13, 2007. RC argued in its motion:

> [RPG] told all its employees that if they wanted to work for [RC] they needed to fill out an application and contact Bob Wepasnick by September 1, 2006

> Four days before [RC] hired its workforce, [Hawkins'] doctor signed a note stating that [Hawkins] was medically unable to work in any capacity for an indefinite period of time.

> * * *

> As a matter of law, [Hawkins] was not covered by the disability discrimination laws because he was not medically qualified to work at the time of the hiring decision at issue.

> [RPG] laid off all its employees, including [Hawkins], because [RPG] went out of business. Therefore, as a matter of undisputed facts and law, all of [Hawkins'] claims of discriminatory and retaliatory termination are baseless.

According to RC:

> To claim disability discrimination an employee must be an otherwise qualified individual who merely needs a reasonable accommodation to perform his job. Section 27–6(v) of the Montgomery County Code states that a "qualified individual with a disability" means:

> An individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position. . . .

> * * *

> Here, . . . [Hawkins] was medically prohibited from working when [RC] hired its workforce. Accordingly, [Hawkins] was not protected under Montgomery County's Human Rights Ordinance because he was not a "qualified" individual with a disability. Simply stated, the law does not require an employer to hire an applicant who is not medically qualified to work

Hawkins filed an opposition to RPG and RC's motions and requested a hearing. He asserted that "[RC's] main contention, that [he] was not a qualified individual under the [MCHRA], is simply factually incorrect." He stated that his off-work placement was a "temporary status;" that "Dr. Cooke . . . informed [him] that he could return to work when he felt medically able to do so;" and "that by September 5, 2006, he felt medically able to return to work and was able to perform the essential functions of a job within his medical restrictions of no lifting over 18 pounds."[3] He stated that "[h]e did not need a form from Dr. Cooke clearing him to return to work because Dr. Cooke left that up to [him]." Hawkins asserted that "[he] clearly was a 'qualified individual' under the [MCHRA] and entitled to protection from disability discrimination and retaliation. . . ."

After a hearing on the motions on October 19, 2007, the circuit court granted summary judgment to both RPG and RC:

> In reviewing all of the affidavits and what's been submitted on both sides, it's undisputed that [RPG] ceased its operations on August 31st, that [RC] obtained those assets. There's no ownership interest in [RC] in [RPG]. It's a separate ownership entity.

> The employees were advised at [RPG] that the sale was occurring. They were advised by a certain date to apply with [RC]. [Hawkins] did not make application. Based upon what's been submitted, there's no obligation on [RC] to hire [Hawkins].

> In addition, there is, [sic] it's undisputed that on August 28th, [RPG] received a note saying that [Hawkins] was advised to remain off work for an indefinite period of time.

> Based upon the affidavits that have been submitted, what's contained in the motions and the memoranda, I'm convinced that summary judgment is appropriate. Accord-

---

**3.** Due to the Labor day holiday, Tuesday, September 5, 2006, was the next business day after Friday, September 1, 2006.

ingly, I'm going to grant the motion for summary judgment as to [RPG], Counts 1, 2, and 3 of the amended complaint. As well as to [RC], I'll grant the motion for summary judgment as to [RC] as well.

We shall include additional facts below as are necessary to our discussion of the issues.

## STANDARD OF REVIEW

The Court of Appeals, in the case of *Doe v. Montgomery County Bd. of Elections,* 406 Md. 697, 711, 962 A.2d 342 (2008), explained: "In considering a trial court's grant of a motion for summary judgment, this Court reviews the record in the light most favorable to the nonmoving party." If the Court concludes that "no material facts are placed in genuine dispute, this Court must determine whether the Circuit Court correctly entered summary judgment as a matter of law." *Id.* (citing Maryland Rule 2–501(f); *Bednar v. Provident Bank of Md., Inc.,* 402 Md. 532, 937 A.2d 210 (2007) (other citations omitted)).

## DISCUSSION

### I.

We address first whether Hawkins was a qualified individual with a disability under the MCHRA. Hawkins argues that "there was a disputed fact [as to] whether [he] was abl[e] to work."

In granting summary judgment, the court stated that "it's undisputed that on August 28th, [RPG] received a note saying that [Hawkins] was advised to remain off work for an indefinite period of time." This statement constitutes an implicit finding that Hawkins was not a qualified individual under the MCHRA as of that date.

To support a claim under the MCHRA, Hawkins must show that, notwithstanding his disability, he was otherwise qualified for employment at the time he sought employment from RC, with or without "reasonable accommodation." MCC § 27–

19(a)(1).[4] As defined by MCC § 27–6(v), a "qualified individual with a disability" is "[a]n individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position."

Hawkins contends that the doctor's note and testimony of former [RPG] employees as to the substance of the note alone "do not render [his] medical ability to work an undisputed fact." He asserts that "the issue of material fact is genuinely in dispute by his own Affidavit, in which he explicitly affirmed, based on his own personal knowledge, that although his doctor placed him off work temporarily, [Hawkins, himself,] was to determine when he felt he could return to work," and that, "he felt he was medically able to return to work as soon as September 5, 2006, [to] perform a job within his medical lifting restrictions."

RC argues: "It is undisputed that [Hawkins'] physician had previously notified RPG that [he] was medically unable to work for an 'indefinite' period of time." Therefore, "on September 1, 2006, when R. Wepasnick hired RC's work force and began operations[, Hawkins] was medically unable to work," and, therefore, he was "not a qualified individual with a disability and was not protected under [MCHRA]." Moreover, RC contends that "[Hawkins] never provided [RC] with any documentation that indicated that he had been medically released from his physician's blanket prohibition from work," and that "[Hawkins] never informed R. Wepasnick that his physician had cleared him to work."

---

4. Montgomery County Code [MCC] § 27–19(a)(1):

 [An employer] must not because of the ... disability of a qualified individual, or because of any reason that would not have been asserted but for the ... disability ... fail or refuse to hire, fail to accept the services of, discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment; or limit, segregate, or classify employees in any way that would deprive or tend to affect adversely any individual's employment opportunities or status as an employee. . . .

To support its contention that Hawkins was not a "qualified individual" as a matter of law, RC cites *Myers v. Hose*, 50 F.3d 278, 280 (4th Cir.1995). In *Myers*, a bus driver, who failed to pass a required health exam and was, therefore, no longer licensed to drive a bus, sued his employer for failing to accommodate him and for discriminating against him for his handicap. According to RC, the *Myers* Court held that an employer is not required to "grant an employee an indefinite period of time to correct [a] disabling condition."

While the *Myers* Court did hold that "[n]othing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect," it also stated that "reasonable accommodation is by its terms most logically construed as that which presently, *or in the immediate future*, enables the employee to perform the essential functions of the job in question." *Myers*, 50 F.3d at 283 (emphasis added). Here, whether Hawkins was able to perform his job at the time he applied for employment and, therefore, was a "qualified individual" under the MCHRA, was a material fact in dispute between the parties.

Also, in *Myers*, the plaintiff was totally precluded from performing his job because of his disability. In this case, the parties dispute whether Hawkins was discriminatorily precluded from even applying to RC. Therefore, it is not clear whether Hawkins would have applied for a position as a pressman with a weight limitation or a managerial position such as the one he claims was taken from him by RPG. But, no matter which position Hawkins would have sought, taking the facts in the light most favorable to him, he was able to perform either position with or without accommodation on September 5, 2006. We are not persuaded that *Myers* necessitates a finding, as a matter of law, that Hawkins was not a qualified individual under the MCHRA when RC hired RPG's other employees.

RC cites *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir.1994), for the premise that "an employee who does not

come to work cannot perform any of his job functions, essential or otherwise."[5] In *Tyndall*, the plaintiff, a teacher, agreed to resign from her teaching position because she was continually away from the classroom for medical and family related reasons. When she sued the school under the ADA for failing to accommodate her disability, the court found that she was not a qualified individual under the Act because of her absences from the classroom. The *Tyndall* Court cited *Walders v. Garrett*, 765 F.Supp. 303, 309 (E.D.Va.1991), *aff'd*, 956 F.2d 1163 (4th Cir.1992), among other cases, in which the U.S. District Court for the Eastern District of Virginia held that "reasonably regular and predictable attendance is necessary for many [jobs]."

Here, it appears that Hawkins worked, when he actually was given hours, on a regular basis, up until August 28th, when he notified RPG that his doctor recommended that he be out indefinitely.[6] Because Hawkins' note did not specify a specific time period within which he could not work, taking the facts in the light most favorable to Hawkins, his "indefinite" absence did not necessarily mean that he would not be able to attend work in a "reasonably regular" manner or that his absence would be for an extended period of time.

RC also argues that "[i]t is fatal to [Hawkins'] claim that his physician never provided [RC] with a release to return to work," citing *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F.Supp.2d 589 (S.D.W.Va.2008). In *Kitchen*, the plaintiff employee provided her employer with a doctor's note recommending that she not work for ninety days. The employer terminated the employee during her ninety day medical leave period. The court stated: "It is well-settled that an individual who has not been released to work by his or her doctor is not a 'qualified individual with a disability.'" *Id.*

---

**5.** RC also cites *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197–98 (4th Cir.1997), for the same premise.

**6.** Contrary to Hawkins' stated date of August 28, 2006, RPG contends that Hawkins' last day of work was August 22, 2006.

RC argues: "It is undisputed that on August 28, 2006, [Hawkins] was medically unable to work for an 'indefinite' period of time. [Hawkins] never provided [RC] with any documentation that indicated that he had been medically released from his physician's blanket prohibition on work. The undisputed facts establish that [Hawkins] never informed R. Wepasnick that [his] physician had cleared him to work."

It is somewhat ironic that RC is arguing that it was never provided with documentation that Hawkins' doctor had cleared him to return to work, in that RC also successfully asserted that RC and RPG are separate entities. Therefore, it appears disingenuous for RC to argue that Hawkins was obligated to provide it with information concerning his ability to return to work from an absence from RPG. This is especially true considering RC's assertion that it had not hired Hawkins. Considering the record in the light most favorable to Hawkins, because Hawkins could return to work whenever he felt ready, a "medical release" from his doctor was not necessary. Because Hawkins asserts that he was ready to work on, or in the immediate future from, the date he attempted to apply for work at RC, there remains a disputed material fact as to Hawkins' status as a "qualified individual" under the MCHRA, and, therefore, summary judgment on that basis was inappropriate.

## II.

The second question presented is whether there is a disputed material fact involving Hawkins' application for employment with RC.

In granting summary judgment, the circuit court stated:

The employees were advised at [RPG] that the sale was occurring. They were advised by a certain date to apply with [RC]. [Hawkins] did not make application. Based upon what's been submitted, there's no obligation on [RC] to hire [Hawkins].

In his affidavit, Hawkins stated:

I have been informed that all employees were handed a new application to fill out just before August 31, 2006 to become employees of [RC]. One of my friends, Frederico Rosales, asked for a job application for me because I was in the hospital at the time. Mr. Rosales told me that they refused to give him an application for employment for me to apply to [RC].[7]

■ To be sure, Hawkins did not state on what date Rosales asked for the job application on his behalf, or whom Rosales asked for the application. On the other hand, the letter of August 30th directs the employees to Mr. Kallon and those hired would be employees of RC on September 1. Nevertheless, the statement supports Hawkins' argument that RC discriminatorily denied him a fair chance to apply for employment. Hawkins argues:

Mr. Kallon had full knowledge of [his] prior complaints of discrimination and retaliation against [RPG] and [ ] he carried over this knowledge to [RC] and told them not to hire [him]. [Hawkins] believe[s he] was singled out and discriminated against and retaliated against by [RC] by [its] failure to re-hire [him] because almost all other non-disabled

---

7. To the extent that this statement would be considered hearsay, we may nonetheless consider it in support of Hawkins' motion in opposition to summary judgment, as neither RPG nor RC has objected to it. *Mut. Fire Ins. Co. v. Ackerman*, 162 Md.App. 1, 9 n. 4, 872 A.2d 110 (2005). In *Mut. Fire Ins. Co.* we explained:

Although [the] evidence [that the declarant "heard" that a building was used as a gathering place for teenagers possibly to smoke and distribute illegal substances] refers to hearsay testimony, without an objection from appellees either here or in the motions court, we must treat the statements as admissible evidence. *See, e.g., Halliday v. Sturm, Ruger & Co., Inc.*, 138 Md.App. 136, 153, 770 A.2d 1072, *cert. denied*, 365 Md. 266, 778 A.2d 382 (2001) (failure of party opposing summary judgment to object to lack of foundation for purported photograph offered by moving party in support of summary judgment required appellate court to "treat the photograph as authentic"); *see generally* 73 Am.Jur.2d Summary Judgment § 50 ("while [hearsay] evidence that might be excluded at the trial may not be used as a basis for granting summary judgment in favor of the party offering it, it may be considered in ascertaining whether a triable issue exists, so it may be utilized as the basis for denying summary judgment"). *Id.*

individuals who worked for [RPG] were re-hired by [RC] without any questions asked but [he] was never even allowed to apply, and[,] of course[,] was not hired.

Hawkins stated in his affidavit that Rick Wirth, then an RC employee, told him, on or about September 5, that "we are under new management and you are not allowed back here." He also stated that on September 7, 2006, "I asked [Mr. Kallon, a human resources worker for RC] if I could apply for work just like all of the other employees who were being rehired. He said to me, 'there is no need to apply Glen, you do not understand.'"

In arguing that Hawkins cannot maintain a cause of action for discriminatory failure to hire because he did not apply for employment with RC, RC refers to the following portion of the August 30, 2006 letter to RPG's employees:

If you have not already received an application, one can be obtained from Ken Kallon in Accounting. .... All employee forms must be completely filled out and turned in, in order to be considered for employment at [RC]. Please make sure to meet with Bob Wapasnick [sic] prior to starting work on Friday September 1st, 2006.

RC argues that "[i]t is undisputed that [Hawkins] never contacted or met with [RC's] decision maker, R. Wepasnick. [Hawkins] never submitted an application to R. Wepasnick." RC cites to multiple cases that hold that a plaintiff who fails to apply for employment cannot establish a *prima facie* case for discrimination.[8]

 Ordinarily, a person would need to make an application for employment to establish a *prima facie* case of discrimina-

**8.** *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir.1998) (upholding dismissal of failure-to-promote claim where plaintiff did not allege that she had applied for a promotion); *Brown v. McLean,* 159 F.3d 898, 903 (4th Cir.1998) (plaintiff who failed to apply for re-employment could not establish a *prima facie* case of discrimination); *Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214, 1217 (8th Cir.1990) (plaintiff did not establish a *prima facie* case of discrimination with regard to openings for which she never formally applied).

tion. But, where the alleged discrimination includes the denial of an opportunity even to obtain an employment application, such a requirement presents a classic Catch–22 situation.

RC also argues that "[Hawkins] cannot rely solely on the alleged statements of subordinate employees to establish his discrimination claim." According to RC, Kallon and Wirth, the two RC employees that Hawkins talked to after September 1, 2006, "were not authorized to make hiring decisions." It quotes *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 291 (4th Cir.2004), where the Court of Appeals for the Fourth Circuit stated:

> To survive summary judgment, an aggrieved employee who rests a discrimination claim ... upon the discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decision maker for the employer.

Here, the letter RPG sent to its employees explicitly stated, "If you have not already received an application, one can be obtained from Ken Kallon in Accounting." The letter permits an inference that *all* RPG employees could apply for employment with RC and also that Kallon would be an RC employee after the sale. After September 1, 2006, Kallon held a human resources management position at RC.[9] When Hawkins inquired into applying with RC after getting out of the hospital, Kallon told him, "there [was] no need to apply." The admonitions in RPG's letter to its employees instructing them to "confirm all terms of employment with [RC]" and to "make sure to meet with Bob Wapasnick [sic] prior to starting work on Friday, September 1st, 2006[,]" do not preclude a reason-

---

9. Hawkins asserts in his affidavit that Kallon was "the former human resources manager for [RPG]" and that he "took a similar postion with [RC]." In his brief, Hawkins states that Kallon is "the Accounting and Human Resources Manager with [RC]." As RC does not dispute this assertion, viewing the facts in the light most favorable to Hawkins, we view Kallon as RC's Human Resources Manager, for the purposes of summary judgment.

able factfinder from viewing Kallon, a human resources manager and the custodian of the applications, as being a principal decision maker for the employer. This is especially true because Kallon occupied a similar position at RPG and was personally familiar with Hawkins and the other employees. Being told to confirm *"terms* of employment with RC" and to "meet with [ ] Wapasnick [sic] prior to starting work" does not necessarily suggest that only Wepasnick could deny Hawkins an application for work or refuse to hire him. It might even suggest that the hiring of RPG's employees by RC was, essentially, a matter of form.

Moreover, RC does not address the alleged refusal to provide Rosales with an application for Hawkins when he asked for one on Hawkins' behalf.

Hawkins has alleged that the denial of employment was discriminatory and based solely on the facts that he had a disability and that he had made claims of discrimination against his previous employer. Viewing the record in the light most favorable to Hawkins, a trier of fact could find a discriminatory failure to hire violation of the MCHRA by RC if it finds that, for these reasons, RC denied Hawkins the opportunity to apply for employment.

As questions of material fact are in dispute, summary judgment as to Count IV of Hawkins' Amended Complaint on the claim of Discrimination/Retaliation for Failure to Hire against RC was inappropriate. We shall reverse the order of summary judgment as to Count IV of Hawkins' Amended Complaint and remand to the circuit court for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED IN PART AND RE-MANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE ROCK-VILLE COLOR, LLC.**