David WATKINS, Plaintiff,

v.

J & S OIL COMPANY, INC., Defendant.

Civ. No. 96–217–B.

United States District Court,
D.   Maine.

Sept. 15, 1997.

Francis Jackson, Portland, ME, for plaintiff.

Joseph J. Hahn, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, David Watkins ("Watkins"), brings this action against Defendant, J & S Oil Company, Inc. ("J & S"), for violation of the Family and Medical Leave Act ("FMLA") (Count I), 29 U.S.C. §§ 2601–2654, the Americans with Disabilities Act ("ADA") (Count II), 42 U.S.C. §§ 12101–12213, and for infliction of extreme emotional distress (Count III) in connection with Watkins' former employment with J & S. Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment as to Counts II and III and denies Defendant's Motion for Summary Judgment as to Count I. In addition, the Court denies Plaintiff's Motion for Partial Summary Judgment.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez, v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

Watkins began working for J & S at its Farmingdale station in February 1993, and was promoted on August 2, 1993, to station manager, a position he retained until October 3, 1994. At the time Watkins was hired, J & S was aware that he suffered from heart problems. On July 23, 1994, Watkins suf-

fered a heart attack that caused him to be out of work until August 28, 1994, when he returned to his position without restrictions. On September 17, 1994, Watkins suffered another heart attack and subsequently underwent surgery. Watkins was released from the hospital on September 26, 1994, and was granted unpaid leave from work by his employer through November 6, 1994.

On October 3, 1994, during Watkins' leave, J & S Human Resources Officer Wade Look ("Look") notified Watkins that J & S planned to replace him with another employee in his position as manager of the Farmingdale station. Watkins remained on the employment roll, however, and continued to receive insurance benefits from J & S until November 6, 1994. On several occasions Watkins was offered other positions with J & S. On November 7, 1994, Look telephoned Watkins to inform him that his leave period of twelve weeks had expired and that J & S would no longer be responsible for his health insurance premiums. Look inquired into Watkins' interest and ability to return to work, but Watkins, after learning that his position as station manager was no longer available, told Look that he and J & S "were going to part company." (Watkins Dep. at 45.)

On December 27, 1994, Watkins filed a complaint with the Maine Human Rights Commission ("MHRC") alleging that he was discriminated against in his employment on the basis of a physical disability (heart attack) by officials of J & S on October 3, 1994, when he was replaced in his position as manager. The MHRC concluded that there were no reasonable grounds to believe that Watkins was unlawfully discriminated against on the basis of a physical disability by J & S pursuant to the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551–4632, and dismissed the complaint.

Watkins subsequently initiated this action, alleging in his Complaint that instead of holding his position open, J & S "terminated" him from his station manager position before the twelve week leave period mandated by the FMLA expired and failed to offer him an equivalent position in violation of the FMLA. In addition, Watkins claims that his replacement on October 3, 1994, was "due to the perception" of J & S that Watkins had a physical impairment, in violation of the ADA. Finally, Watkins alleges that he suffered "extreme emotional distress" as a result of the treatment he received from J & S. Watkins seeks back-pay with interest, reinstatement (or, in the alternative, front-pay), and money damages.

## III. FAMILY AND MEDICAL LEAVE ACT

The Family and Medical Leave Act provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). At the end of such leave, the FMLA requires an employer to restore the employee either to the position held by the employee when the leave commenced or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A), (B).

In order to establish *a prima facie* case for a FMLA violation, Plaintiff must produce evidence that: (1) he is protected under the Act; (2) he suffered an adverse employment decision; and (3) either he was treated less favorably than an employee who had not requested FMLA leave or the adverse decision was made because of his request for leave. *Oswalt v. Sara Lee Corp.,* 889 F.Supp. 253, 259 (N.D.Miss.1995), *aff'd,* 74 F.3d 91 (5th Cir.1996).

Because there remain genuine issues of material fact regarding Plaintiff's FMLA claim, Plaintiff's Motion for Partial Summary Judgment on Count I must be denied. It is undisputed that Plaintiff was an "eligible employee" entitled to FMLA leave. Plaintiff in his Motion for Partial Summary Judgment appears to argue that he suffered an adverse employment decision (1) when he was replaced in his position as manager of the Farmingdale station on October 3, 1994, and (2) when Defendant failed to reinstate him or offer him an equivalent position at the end of twelve weeks of leave.

The Court is persuaded that the October 3 replacement of Plaintiff does not nec-

essarily constitute an adverse employment decision under the FMLA. The FMLA guarantees only that, on return from leave, an employee shall either be (a) restored to the position of employment held by the employee when the leave commenced; or (b) "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). "[T]he FMLA does not require that an employee be returned to the exact position that he held prior to embarking on his leave." *Brown v. J.C. Penney Corp.*, 924 F.Supp. 1158, 1163 (S.D.Fla.1996); *see* 29 C.F.R. § 825.214(a) (noting that an employee is entitled to reinstatement "even if the employee has been replaced").

Failure to offer Plaintiff an equivalent position at the end of his leave may, however, constitute an adverse employment decision. Plaintiff has produced evidence that the positions offered him, a third shift attendant position and a vaguely described office job, were not equivalent to the station manager position that he occupied before his FMLA leave. (Watkins Aff. ¶¶ 5, 8.) In addition, Plaintiff has presented some evidence that the failure to provide him with an equivalent position was due to the medical condition that necessitated his leave.

In its Motion for Summary Judgment, Defendant claims that Plaintiff was unable to return to any form of work at the end of the twelve week FMLA leave period and that, therefore, it was under no duty to provide him with equivalent employment. Indeed, if after twelve weeks of leave Plaintiff was unable to return to work, Defendant was thereafter under no duty to provide him with equivalent employment. If at the end of the FMLA leave period, "the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.214(b). However, viewing the evidence in a light most favorable to Plaintiff, the Court cannot conclude that Plaintiff was unable to perform the essential functions of his position. The twelve week FMLA protection period expired on November 6, 1994.[1] It is unclear from the record whether Plaintiff was capable at that time of returning to work.

Defendant also contends that Plaintiff, angry at being replaced, never provided it with a time frame for his expected return to work or with medical certification, and quit before Defendant had an opportunity to place him in an equivalent position. It is uncontroverted that at the end of the twelve week FMLA leave period, Plaintiff stated "we are going to part company." (Watkins Dep. at 45.) However, viewing the evidence in a light most favorable to Plaintiff, the Court cannot conclude as a matter of law that Plaintiff's actions absolved Defendant of its duties under the FMLA. Therefore, Defendant's Motion for Summary Judgment is denied as to the FMLA claim.

## IV. AMERICANS WITH DISABILITIES ACT

■ The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of

---

1. Plaintiff argues that because he applied one week of accrued paid vacation time toward his leave, the FMLA protected period did not end until November 13, 1994 (giving him a total of thirteen weeks of leave starting from his July 23 heart attack). In doing so, Plaintiff erroneously draws a distinction between paid leave and unpaid leave, arguing that only unpaid leave counts toward the FMLA's required twelve weeks of leave. Contrary to Plaintiff's assertions, the leave required by the FMLA clearly includes both paid and unpaid leave. The FMLA entitles an eligible employee only to "a total of 12-weeks of *leave.*" 29 U.S.C. § 2612(a)(1) (emphasis added). In fact, the statute expressly permits an employer to "require the employee[] to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided … for any part of the 12-week period." 29 U.S.C. § 2612(d)(2)(B).

the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■■■ When, as here, there is no direct evidence of discrimination, the burden shifting rules established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668 (1973), are applied. *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1 st Cir.1996). Plaintiff must bear the initial burden of establishing a *prima facie* case of discrimination by proving that: (I) he has a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; (3) he was subject to an adverse employment action by Defendant; (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (5) he suffered damages as a result. *Id.* Once Plaintiff establishes a *prima facie* case, "the burden of production shifts to the defendant but requires, only, that the defendant articulate a legitimate, nondiscriminatory reason for its action." *Hodgens v. General Dynamics Corp.,* 963 F.Supp. 102, 106 (D.R.I.1997) (citing *McDonnell Douglas,* 411 U.S. at 802–806, 93 S.Ct. at 1824–1826). "If that is done, the plaintiff must prove that the proffered reason is merely a pretext for disability discrimination." *Id.*

For the purposes of its Motion for Summary Judgment, Defendant concedes that Plaintiff suffers from a disability within the meaning of the ADA. Defendant argues, however, that Plaintiff has failed to show that he was "otherwise qualified" or that he suffered an adverse employment action because of his disability.

First, Defendant argues that Plaintiff has failed to show that as of October 3, 1994, the date of his replacement, he was able to perform the essential functions of his job with or without reasonable accommodation. It is uncontested that on October 3, 1994, the day Plaintiff was replaced in his position as station manager, he was unable to return to work and that, as such, Plaintiff was unable to perform the essential functions of his position without reasonable accommodation. Defendant claims that no reasonable accommodation on its part would have enabled Plaintiff to perform the essential functions of his position. Plaintiff, on the other hand, claims that Defendant failed to reasonably accommodate him by refusing to hold his position, or to fill it temporarily, while he was out on medical leave recovering from his heart attack.[2] The issue is whether Defendant was required, as a reasonable accommodation, to hold Plaintiff's position open for him during his medical leave of absence.

---

**2.** Plaintiff offers a second, albeit unclear, argument that Defendant could have reasonably accommodated his disability by placing him on "light duty for a short period" but instead "terminated" him prior to the end of the twelve week leave mandated by the FMLA. (Pl.'s Mot. Summ. J. at 5–6; Pl.'s Answer Interrogs. ¶ 10.) Plaintiff argues that he could have returned to his station manager position with minor accommodation on or by November 7, 1994, but that Defendant instead "terminated" him before this date, "preempting" any reasonable accommodation request he may have made. This argument assumes that Plaintiff was entitled under the ADA to have his position kept open for twelve weeks of leave after which he was entitled to any reasonable accommodation that would at that time have allowed him to return to his former position. Plaintiff argues that "a termination ... which violates the FMLA must necessarily violate the reasonable accommodation obligation under the ADA." (Pl.'s Mot. Summ. J. at 6.) Plaintiff cites no authority in support of this proposition.

It is true that a disabled employee may be simultaneously protected by both the ADA and

the FMLA. *See* 42 U.S.C. § 12201(b). That does not mean, however, that the two statutes somehow merge so that a violation of one act constitutes a *per se* violation of the other. Nothing in the ADA or the FMLA requires that an employer keep an important managerial position vacant for twelve weeks. In some circumstances "reasonable accommodation" may include providing leave and then returning an employee to his former position with certain adjustments, but such a practice is by no means a matter of right.

Plaintiff's argument is only weakened by the fact that he never informed Defendant as to when he might be able to return or what accommodations he might require. It is undisputed that Plaintiff remained an employee of J & S after he was replaced as station manager and that on several occasions Defendant inquired into his status and offered him other positions upon his return. It is difficult to see how, under such circumstances, Plaintiff was "preempted" from making a reasonable accommodation request.

In *Hudson v. MCI Telecommunications,* 87 F.3d 1167, 1169 (10th Cir.1996), the court held that where an employee failed to present any evidence of the expected duration of her impairment *as of the date of her termination,* her employer was not required to wait indefinitely for her recovery from carpel tunnel syndrome. The court noted that "a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation," reasoning that reasonable accommodations under the ADA include accommodations "which presently, *or in the near future,* enable the employee to perform the essential functions of his job." *Id.* (citing *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995)) (emphasis added). However, the court held that the employer in that case was not required to provide its employee with time to recover because, through the date of her termination, physicians' reports stated only that permanent impairment was not anticipated and did not indicate when she could expect to resume her regular duties. *Id.* The court rejected the employee's argument that her employer's knowledge that she would eventually recover was sufficient to mandate temporary leave rather than termination. *Id.*

The court in *Myers* also rejected an employee's claim that his employer failed to reasonably accommodate his medical conditions by refusing to grant him a period of time in which to cure his disabilities. *Myers,* 50 F.3d at 282. The court reasoned:

> [The ADA] contain[s] no reference to an individual's future ability to perform the essential functions of his position. To the contrary, [it is] formulated entirely in the present tense, framing the precise issue as whether an individual "can" (not "will be able to") perform the job with reasonable accommodation. Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.

*Id.* at 283. The court concluded that an employer was not required to provide a bus driver suffering from diabetes, a heart condition, and hypertension, with time to ameliorate his medical conditions because reasonable accommodation refers to an employee's *present* ability to perform his job. *Id.* Significantly, the court also noted that to require that the position remain unfilled while the driver improved his health would have imposed a significant burden on the county. *Id.*

▪ Reasonable accommodation does not require leaving a position open or filling it temporarily when an employer offers uncontradicted evidence of the importance of such a position to its business, especially when the employer has no way of knowing when, or even if, the employee will return to work. *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1187–88 (6th Cir.1996); *see also Rogers v. International Marine Terminals,* 87 F.3d 755, 759 (5th Cir.1996) (noting that "while [plaintiff] contends that [defendant] was required to accommodate [temporary ankle disability] by allowing him to join indefinite leave, this argument is meritless").

In *Stubbs v. Marc Center,* 950 F.Supp. 889 (C.D.Ill.1997), a finance director suffered a heart attack and subsequently underwent bypass surgery which required two weeks leave and at least two weeks of reduced workload. The court, citing *Myers* and *Hudson,* held that the employer was entitled to replace the finance director with another viable candidate, reasoning that "it is simply not reasonable for an employer to have to do without one of its most pivotal management positions during the most critical time of the year." *Id.* at 893; *see also Scheer v. City of Cedar Rapids,* 956 F.Supp. 1496 (N.D.Iowa 1997) (epileptic airport safety officer's demand to retain his position indefinitely until he was seizure free for six months and could perform essential job function of driving was not reasonable accommodation).

Plaintiff contends that "extended periods of leave have repeatedly been required by the courts" under the ADA. (Pl.'s Resp. Def.'s Mot. Summ. J. at 9.) In support of his position, Plaintiff cites *Schmidt v. Safeway, Inc.,* 864 F.Supp. 991 (D.Or.1994), *Corbett v.*

*National Prods. Co.*, No. CIV.A.94–2652, 1995 WL 133614 (E.D.Pa. Mar.27, 1995), and *Vializ v. New York City Bd. of Educ.*, No. 93 Civ. 8009, 1995 WL 110112 (S.D.N.Y. Mar.13, 1995). It is true that reasonable accommodation, in some circumstances, may include holding a position open while an employee takes medical leave so long as such leave does not impose an undue burden on the employer. *See* 29 C.F.R. Pt. 1630 App. (EEOC interpretive regulation to Section 1630.15(b) and (c)) (An employer may, "in appropriate circumstances, have to consider the provision of leave to an employee as a reasonable accommodation, unless the provision of leave would impose an undue hardship."); 29 C.F.R. Pt. 1630 App. (EEOC interpretive regulations to Section 1630.2(*o*)) (Reasonable accommodations could include "providing additional unpaid leave for necessary treatment."); *see also Hudson*, 87 F.3d 1167.

*Schmidt* and *Corbett* involved employees suffering from alcoholism who requested leave for a limited time period in order to attend rehabilitation programs. (In *Corbett* leave was requested to attend a 28–day inpatient treatment program.) The medical treatment envisioned and the leave necessitated in *Schmidt* and *Corbett* were of definite and limited duration. Moreover, the *Schmidt* and *Corbett* holdings were based on the respective courts' findings that it was "likely that, following treatment, plaintiff would have been able to safely perform his duties." *Schmidt*, 864 F.Supp. at 996–97; *Corbett*, 1995 WL 133614, at *4. As the *Corbett* court noted, "the successful completion of the treatment program would have eliminated any effects of his disability on job performance." *Corbett*, 1995 WL 133614, at *4. Finally, key to the courts' decisions in those cases were the respective findings that holding the employees' positions open temporarily would not have imposed undue hardship on the employers.

Plaintiff here suffered two heart attacks and his position was held open for seven weeks before Defendant hired someone to replace him. It is uncontested that at the time of his replacement, October 3, 1994, Plaintiff could not give Defendant any estimate of the duration of his recovery period or even an approximate date of expected return, but simply told the Defendant that he was informed upon discharge from the hospital that he would be able to drive in three to eight weeks. (Watkins Dep. at 32.) It is also undisputed that on October 3, 1994, Plaintiff had no knowledge of when he would be physically able to return to work. (Watkins Dep. at 32; Look Aff. ¶ 8.) Plaintiff did not discuss the possibility of returning to work with a doctor until at least October 15. (Watkins Dep. at 31). Halfway through October, after suffering two heart attacks in less than two months, going back to work "was not the closest thing" on his mind. (Watkins Dep. at 34.) Plaintiff had just undergone heart surgery and, justifiably, was "more interested in living than ... anything else." (Watkins Dep. at 34–35.)

Plaintiff was not fired when his vacant position was filled and several times after he was replaced Look approached Plaintiff inquiring whether he planned to return to work. (Watkins Dep. at 27; Look Aff. ¶ 9.) Look made offers of other positions, yet all his entreaties were rejected until Plaintiff stated that they would "part company" because for him it was "the store manager's position or nothing." (Watkins Dep. at 45; Look Aff. ¶ 12.) Plaintiff never provided Defendant with medical certification regarding his condition and ability to return to work as requested, and, in fact, never gave Defendant a time frame for his recovery or return. (Look Aff. ¶ 8.)

Plaintiff, in failing to provide his employer with any information regarding his ability to return, demands what certainly amounts to "indefinite leave." Such an accommodation is not required by the ADA. In addition, Defendant has made an uncontroverted showing that it would suffer undue hardship if it were forced to keep the station manager position vacant. The Farmingdale station had only recently opened and required strong and consistent management. (Look Aff. ¶ 9.) Workers filling in for Plaintiff were overextended, some working six days and as much as sixty hours per week for almost two months. (Look Aff. ¶ 9.) Plaintiff has failed to create a genuine issue of material fact regarding Defendant's explanation that keep-

ing his position open while he was on open ended disability leave would have imposed undue hardship.

Defendant has presented a legitimate non-discriminatory reason for replacing Plaintiff. Plaintiff has presented no evidence that Defendant's reason was merely a pretext for illegal discrimination. Accordingly, Defendant's Motion for Summary Judgment as to the ADA claim is granted.

## V. INFLICTION OF EXTREME EMOTIONAL DISTRESS

██ Finally, Plaintiff alleges infliction of "extreme emotional distress," without specifying whether such infliction was intentional or negligent. Plaintiff has not provided sufficient evidence to raise a question of material fact necessary to survive Defendant's Summary Judgment Motion. In order to prove a claim for negligent infliction of emotional distress, Plaintiff must show that: (1) Defendant was negligent; (2) Plaintiff suffered emotional distress that was a reasonably foreseeable result of Defendant's negligent conduct; and (3) Plaintiff suffered severe emotional distress as a result of Defendant's negligence. *Braverman v. Penobscot Shoe Company*, 859 F.Supp. 596, 607 (D.Me.1994) (citing *Bolton v. Caine*, 584 A.2d 615, 617–18 (Me.1990)). Even if the Court could find the Defendant negligent, Plaintiff has not established the requisite factual predicate for a finding of "severe" emotional distress. *Braverman*, 859 F.Supp. at 607 (citing *Bolton*, 584 A.2d at 618). There is absolutely no factual basis to support any claim for infliction of intentional emotional distress. Therefore, Defendant's Motion for Summary Judgment is granted as to Count III.

## VI. CONCLUSION

The Court grants Defendant's Motion for Summary Judgment as to Counts II and III. The Court denies Defendant's Motion for Summary Judgment as to Count I and denies Plaintiff's Motion for Partial Summary Judgment in its entirety.

*SO ORDERED.*