Cooper v. Thomson Newspapers          CV-96-444-SD 1/29/98    P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE

Nancy L. Cooper

    v.                                    Civil No. 96-444-SD

Thomson Newspapers, Inc.


O R D E R


    Plaintiff Nancy Cooper initiated this case against her
former employer, Thomson Newspaper Company, after she was
terminated.  Cooper's complaint charges that by discharging her,
Thomson violated the Americans with Disabilities Act of 1990, 42
U.S.C. § 12112 (ADA), and the Family and Medical Leave Act of
1993, 29 U.S.C. § 2601, et seq. (FMLA).  Cooper also seeks to
recover under the common law for wrongful discharge.  Presently
before the court is Thomson's motion for dismissal or for summary
judgment.[1]

Background

    The Portsmouth Herald, a division of Thomson, employed
Cooper as an account executive within the retail advertising

---

[1]Thomson has also requested oral argument and leave to file
a reply memorandum.  The court does not believe that oral
argument would be helpful, and therefore denies Thomson's
request.  Thomson's request for leave to file a reply memorandum
is hereby granted.  The court has considered Thomson's reply
memorandum.

department. Cooper attained high sales figures and received positive evaluations in December 1993 and August 1994.

On November 11, 1994, Cooper left for a pre-approved medical leave of absence to undergo and recover from back surgery. While she was on leave, Cooper attended a Christmas party, at which her supervisors observed that she was limited in her ability to walk. Cooper also had planned to attend a party held by Gloria Bonito, the retail advertising director. Bonito, however, discouraged Cooper from attending because she did not think Cooper would be able to climb the stairs at her house.

On January 26, 1995, Cooper met with Bonito to discuss her return to work. Cooper brought a letter from her treating physician clearing her to return to work with the restriction that she avoid lifting anything in excess of forty-five pounds. Cooper's doctor also recommended that she be allowed frequent discretionary changes of position. During the meeting, Bonito asked whether Cooper had driven herself to the office and whether she would be able to drive when she returned to work.

Cooper returned to work on Friday, February 3, 1995. On the morning of her return, she was asked to meet with Bonito and Dawn Grasso, the retail advertising manager. At the meeting, Bonito expressed concern over Cooper's physical condition. Bonito also presented Cooper with a written employee warning notice and a memorandum stating that, during Cooper's leave, nine customers

2

had complained about her job performance. Bonito requested that Cooper sign the warning, but Cooper refused to sign. Cooper then asked Bonito to stop the meeting for a few minutes because her back became painful. When the meeting resumed, Bonito continued to request that Cooper sign the complaint. The meeting ended when Bonito stormed out of the office.

The following Tuesday, Cooper left work for a follow-up x-ray of her back. During the appointment, Cooper had severe back pain, which prompted her to pay an unscheduled visit to her doctor immediately following the x-rays. On Wednesday morning, Bonito asked Cooper why she took so long at her appointment the previous day. Cooper explained the situation and told Bonito that the pain in her back had been occurring since her return to work. Bonito asked Cooper if she was blaming Bonito for her increased pain and stated that by taking so long at the previous day's appointment she was failing to service her customers. Bonito told Cooper she should take care of her physical ailments on her own time. Bonito also told Cooper that some of her customers were waiting for someone to take care of their advertising and that Cooper should have been calling on them.

On the afternoon of February 7, Cooper met with the publisher Ted Staszak, Bonito, Grasso, and Bennita Morand, the executive administrative assistant. At this meeting, Cooper

submitted a written response to the warning and complaint memorandum she received on February 3.

On Wednesday, February 8, 1994, Cooper had an encounter with Jenna Dufresne, which became the basis of a harassment complaint against Cooper. Dufresne, a part-time employee, had been covering some of Cooper's accounts while she was on leave. Cooper claims she approached Dufresne because she needed information about the accounts Dufresne had been servicing. Dufresne, however, felt that Cooper was harassing her by continually questioning Dufresne about the complaints. Dufresne felt that Cooper was accusing her of soliciting the complaints and felt Cooper was suggesting that Dufresne was trying to steal her job.

On February 8, 1994, Cooper was asked to meet with Staszak and Bonito. They told Cooper she was not to discuss her situation with any other employees and that another employee had filed a harassment charge against her. During the course of the meeting, tensions escalated, and Staszak fired Cooper.

## Discussion

### I. Standard of Review

The entry of summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Sav., 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994), the court must scrutinize the entire record in the light most favorable to the non-movant, with all reasonable inferences resolved in that party's favor. Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995); see also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994).

This case, like so many employment cases, turns on a question of motive. Both parties agree that Cooper was terminated shortly after her return from her FMLA leave. While Cooper believes that The Herald fired her because her supervisors thought she was disabled and in retaliation for taking FMLA leave, Thomson contends that the termination was based upon

5

Cooper's poor performance and insubordination.  Summary judgment, however, is not necessarily precluded,

> even in cases where elusive concepts such as motive or intent are at issue.  "[I]f the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," summary judgment may be appropriate even where intent is an issue.  Where, however, the nonmoving party has produced more than that, trial courts should "use restraint in granting summary judgment" where discriminatory animus is in issue.

DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994); Valles Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984)).

Thomson asks the court to dismiss Cooper's wrongful discharge claim for failure to state a claim upon which relief can be granted.  However, because Thomson has already filed an answer, thereby closing the pleadings under Rule 7(a), Fed. R. Civ. P., the motion to dismiss is more properly styled a motion for judgment on the pleadings.  See Rule 12(c), Fed. R. Civ. P. The standard for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion.  See Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986).  To resolve defendant's motion, the court must "take the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in [her] favor."  Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184,

187 (1st Cir. 1993) (citing <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 442-43 (1st Cir. 1992)). The court may properly grant a motion for judgment on the pleadings "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" <u>Garita Hotel Ltd. Partnership v. Ponce Fed'l Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992) (quoting <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).

## II. Americans with Disabilities Act Claim

To recover under Title I of the ADA, the "plaintiff must prove three things. First, that [s]he was disabled within the meaning of the Act. Second, that with or without reasonable accommodation [s]he was able to perform the essential functions of [her] job. And third, that the employer discharged [her] in whole or in part because of [her] disability." <u>Katz v. City Metal Co.</u>, 87 F.3d 26, 30 (1st Cir. 1996). Thomson argues that the court should grant summary judgment on Cooper's ADA claim because she has failed to show that she was disabled within the meaning of the Act.

For purposes of the ADA, disability means, "(A) a physical or mental impairment that substantially limits one of more of the major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

7

42 U.S.C. § 12102 (1994). Cooper does not claim that she is disabled, but rather that Thomson regarded her as disabled. Thus the court need only address the perceived disability test.

The "regarded as" definition of disability provides protection to individuals who are not disabled at all, but are wrongly perceived to be disabled. See Katz, supra, 87 F.3d at 33. Of course, perception is a question of state of mind to which there is often a lack of direct evidence. The court therefore must examine the information to which the employer had access and exercise restraint in granting summary judgment if there is evidence from which a jury could infer that the employer perceived the employee as disabled. See DeNovellis, supra, 124 F.3d at 306 (court should exercise restraint in granting summary judgment when intent in issue). For instance, in Katz, the United States Court of Appeals for the First Circuit considered summary judgment inappropriate when the plaintiff showed that his employer knew he had a heart attack and underwent angioplasty, the employer had witnessed Katz's inability to climb a flight of stairs, and Katz told the employer he would initially return to work in a limited capacity. See Katz, supra, 87 F.3d at 32.

In this case, Cooper has presented evidence that her employer knew of her back condition and was concerned about it. Cooper's supervisors knew that she required medical leave to undergo surgery. When Cooper discussed her return with Gloria

Bonito, Bonito questioned whether Cooper would be able to drive. The conflict that arose between Cooper and Bonito over Cooper's absence from work to attend a medical appointment could also support the inference that her supervisors perceived her back injury as a disability. Although not compelling, this evidence is more than unsupported speculation.

In a perceived disability case, a plaintiff must show, not only that the employer perceived an impairment, but that the employer considered the impairment substantially limiting. Where an individual has been fired or denied employment that does not require unique physical skills based upon perceived impairment, the employer's action "can constitute treating [the employee or] applicant as if her condition substantially limited a major life activity, viz., working." Cook v. State of R.I. Dept. of MHRH, 10 F.3d 17, 26 (1st Cir. 1993). Thus, if a jury determined that Cooper was terminated based upon her back condition, it could infer that her employer perceived Cooper as substantially limited in her ability to work.

## III. Family and Medical Leave Act

The FMLA requires employers to provide eligible employees up to twelve weeks of medical leave during any twelve-month period. See 29 U.S.C. § 2612(a) (1994). When an employee returns from leave, the FMLA requires the employer to restore the employee to his or her former position or to an equivalent position. See id.

Of course, the FMLA does not prohibit employers from disciplining employees or terminating for cause. The Act does, however, prohibit employers from discharging employees in retaliation for exercising their rights under the Act.

Although the First Circuit has not addressed the test to be used in FMLA retaliation claims, most courts faced with retaliation claims have applied the familiar burden-shifting model used in Title VII cases. See, e.g., Morgan v. Hilti, Inc., 108 F.3d 1319, 1325 (10th Cir. 1997); Watkins v. J & S Oil Co., 977 F. Supp. 520, 522 (D. Me. 1997); Leary v. Hobet Mining, Inc., 1997 WL 665510 at *3 (S.D. W. Va. Oct. 23, 1997). To establish a prima facie case, a plaintiff must show three things: first, that she exercised rights under the FMLA; second, that she was subjected to an adverse employment decision; and, third, that she was treated less favorably than employees who did not request leave or the decision was made because she took leave. See Watkins, supra, 977 F. Supp. at 522. Although the burden of persuasion remains on the plaintiff at all times, when the plaintiff establishes a prima facie case, it creates a presumption that the employer discriminated in violation of the Act. See St. Mary's Honor Society v. Hicks, 509 U.S. 502, 506 (1993) (Title VII). The employer then bears the burden of production, and must come forward with evidence that, if believed by the trier of fact, would establish a legitimate motive for its action. See id. If the employer produces such evidence, the

10

presumption is eliminated and, to prevail, the employee must produce evidence that the employer's proffered reason is a pretext for retaliation.

In this case, Cooper has presented enough evidence to state a prima facie claim. No one disputes that Cooper took FMLA leave and was terminated. The contention is over whether Cooper has produced evidence that she was treated less favorably than employees who did not take leave, or was terminated because she took leave. Cooper argues that she was disciplined more severely than other advertising representatives who did not take leave. To support this contention, Cooper points to the affidavit of Carol Connery, The Herald's credit and collections specialist. See Plaintiff's Exhibit J. According to Connery, who knew about all errors resulting in credits to customer accounts, Cooper's customers had no more problems than those of other advertising representatives. Connery also frequently heard complaints from advertising customers and does not recall receiving any complaints about Cooper's performance. Cooper also contends that other employees who were the subject of customer complaints were issued verbal warnings documented by employee contact records, rather than written warnings. See Plaintiff's Exhibits AA, BB. Finally, Cooper has furnished the affidavit of a former advertising representative who stated that errors are commonly made in the newspaper advertising business. See Plaintiff's Exhibit T.

Thomson, however, has met its burden by providing evidence that The Herald had a legitimate nondiscriminatory reason for terminating Cooper. The written warning Cooper received upon returning to work documented nine customers who had complained about her performance. After Cooper had received this written warning, another Herald employee made a harassment complaint against Cooper. These incidents, if believed, reveal a nondiscriminatory basis for Cooper's termination. Thus Cooper bears the burden of showing that these proffered reasons for termination are a pretext for retaliation.

Although Cooper cannot point to any direct evidence of retaliatory motive, the temporal proximity between Cooper's leave and her termination supports the inference that her termination was retaliatory. See Fennel v. First Step Designs, Ltd., 83 F.3d 526, 535-36 (1st Cir. 1996). Furthermore, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." St. Mary's Honor Center, supra, 509 U.S. at 511. In this case, Cooper calls into question the veracity of The Herald's alleged reasons for her termination.

The gravamen of Cooper's pretext case is that the charges against her were solicited and exaggerated by The Herald. The affidavit of Steve Vinciguerra, one of Cooper's clients listed on

12

The Herald's list of complaints, is her strongest piece of evidence.  Vinciguerra states that he did not have any problems with Cooper's performance, but was pressured into signing a written complaint presented to him by a Herald employee.  According to Vinciguerra, after the paper had accidentally run a color advertisement on the wrong day, Cooper arranged to rectify the problem by not charging extra for the color.  While Cooper was out on leave, Jenna Dufresne told Vinciguerra that to receive a credit for the color, he had to sign a prepared complaint.  Cooper also contests the validity of the other complaints lodged against her.  For instance, Cooper claims that she never met one of the clients alleged to have complained about her service.  See Plaintiff's Exhibit D at 110.  Thomson's only evidence of the complaints is the summary prepared by The Herald.  Thomson has not produced any original documentation or affidavits from the clients who allegedly complained about Cooper's performance.  Thus the validity of the complaints against Cooper remainss a disputed issue of material fact.

## IV. Wrongful Discharge

New Hampshire law recognizes an exception to the general at-will employment relation prohibiting employers from terminating employees for reasons that violate public policy.  See Monge v. Beebe Rubber Co., 114 N.H. 130, 133, 316 A.2d 549, 551 (1974).  "[T]o have a valid claim for wrongful termination, the plaintiff

13

must show: 'one, that the employer terminated the employment out of bad faith, malice, or retaliation; and two, that the employer terminated the employment because the employee performed acts which public policy would encourage or because he refused to perform acts which public policy would condemn.'" <u>Wenners v. Great State Beverages</u>, 140 N.H. 100, 103, 663 A.2d 623, 625 (1995) (quoting <u>Short v. School Admin. Unit 16</u>, 136 N.H. 76, 84, 612 A.2d 364, 370 (1992)), <u>cert. denied</u>, 116 S. Ct. 926 (1996). The United States Court of Appeals for the First Circuit has stated that under New Hampshire law, "the existence of [a statutory] remedy precludes . . . a common law claim for wrongful discharge." <u>Smith v. F.W. Morse & Co.</u>, 76 F.3d 413, 429 (1st Cir. 1996). Thus, to state a claim for wrongful discharge, Cooper must allege that her employer terminated her because she performed an act public policy would encourage, and for which there is no statutory remedy.

Cooper argues that her wrongful discharge claim is not predicated on her claims that she was discharged because of her perceived disability and in retaliation for taking leave. Rather, Cooper argues, <u>The Herald</u> violated public policy by soliciting and exaggerating the complaints against her. This claim, however, must fail. Under New Hampshire law, there are two elements to wrongful discharge. The first, which Cooper cites, is a termination motivated by bad faith, malice, or retaliation. The second element, which Cooper ignores, requires

14

that the employee performed a protected <u>act</u>. The New Hampshire Supreme Court has rejected the notion that a termination based upon the employee's status could form the basis for a wrongful termination claim because such a termination is not based upon the employee's action. Similarly, in this case Cooper has not identified an act on her part that public policy would encourage. Thus she does not state a claim for wrongful termination.

<u>Conclusion</u>

For the abovementioned reasons, defendant Thomson's Motion for Summary Judgment (document no. 9) is granted in part and denied in part. Judgment will be entered for Thomson on Cooper's claim for wrongful discharge (Count III).

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 30, 1998

cc:  Eleanor H. MacLellan, Esq.
     Stephen L. Tober, Esq.