**Rouse v. Markem Corp.**                    **CV-98-229-B    08/22/99**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Wendell F. Rouse,
     Plaintiff

     v.                                    Civil No. 98-CV-229-B

MARKEM Corporation,
     Defendant


### O R D E R

Plaintiff Wendell F. Rouse has sued his former employer, the MARKEM Corporation, alleging violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., ("FMLA"). Rouse alleges that MARKEM failed to inform him of his right to take leave for treatment of a serious medical condition under the law and subsequently fired him in violation of the FMLA. He seeks damages in the form of lost wages, future wages, retirement benefits, insurance, and medical costs. The Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. The Plaintiff has moved for partial summary judgment on the issue of liability, arguing, among other things, that MARKEM failed to post the required FMLA notices at its plant or otherwise notify Rouse of his rights under the law. For the reasons set forth

below, I deny both motions.[1]

## STANDARD

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248. In ruling

---

[1] This Order primarily addresses Defendant's motion (document no. 8), although there are facts and issues common to both motions discussed herein. As to Plaintiff's motion (document no. 9), I find that the record demonstrates multiple issues of material fact precluding summary judgment. For example, the parties vigorously dispute whether or not MARKEM complied with the FMLA's posting requirements. While the evidence may suggest the possibility that MARKEM did not properly post an FMLA notice, it does not clearly establish that fact. Indeed, it would not be unreasonable based on the record for a fact-finder to conclude that MARKEM did post the requisite notice. This dispute clearly prevents me from granting partial judgment in Plaintiff's favor. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

on a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant and determine whether the moving party is entitled to judgment as a matter of law. See Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

## FACTS

Wendell "Wink" Rouse began working for the Defendant as a temporary employee at MARKEM's Keene, New Hampshire, facility in August 1991. Rouse became a full-time employee in March 1992. As a full-time employee, Rouse was eligible for various benefits, including retirement, health care, and disability insurance. He was also eligible for MARKEM's "Salary Plan," which provided employees with up to one year of paid leave due to "accident, illness, pregnancy or other disability." Rouse received MARKEM's Employee Handbook, which described his benefits, when he became a full-time employee.

Rouse admits that he never read the Handbook, stating that it "didn't show me any interest" and "I was not paid at Markems to sit and read." MARKEM amended the Employee Handbook from time to time, and distributed supplements to employees as necessary. Rouse received such supplements, which he "might look at" and

-3-

then placed them in his desk drawer.

In 1993, Congress enacted the FMLA. The FMLA guarantees eligible employees of covered employers up to 12 weeks of unpaid leave each year to deal with serious personal matters, including the birth of a child or a serious medical condition. See 29 U.S.C. § 2612. MARKEM amended its Employee Handbook to reflect the new law, adding a family and medical leave policy in or around December 1993. The amended Handbook stated that "MARKEM supports the policies set forth by the Family and Medical Leave Act." The policy noted that, pursuant to the law, eligible employees could take up to 12 weeks of leave in certain situations. It also noted that employees eligible for MARKEM's Salary Plan would receive paid time off for such leave.

Rouse took advantage of MARKEM's leave policy on at least two occasions. In 1993, Rouse injured his knee while water skiing and required two weeks of leave for surgery and recovery. The following year, Rouse took time off to recover from a back injury he sustained while rescuing a swimmer from drowning in a pond. Rouse provided MARKEM with appropriate medical excuses on both occasions, and MARKEM continued to pay Rouse in accordance with the provisions of the Salary Plan.

Rouse was diagnosed with Hepatitis C in 1995. He believed that he may have been infected when he used intravenous heroin while overseas in 1974. Hepatitis C is a virus which affects the liver and can lie dormant for years, later manifesting itself in a variety of symptoms. According to Dr. Teng Beng Go, a specialist who treated Rouse, people with Hepatitis C can "yo-yo" - sometimes suffering severe flu-like symptoms or fatigue and feeling better other times. Rouse began to suffer flu-like symptoms in December 1995, which continued off and on for many months.

In January 1996, Rouse missed 16 hours of work. In February, he was transferred to another department at MARKEM. On February 28, Rouse did not come to work. He later telephoned, saying he would be out for the remainder of the week and would submit a doctor's note the following Monday, March 4. A friend drove Rouse to the emergency room on March 2, as he was "weak, shaky, sweaty, incoherent and nauseous." On Monday, March 4, Rouse brought a note from the Lahey Hitchcock Clinic confirming his illness and stating that he should remain out of work until Friday, March 7. He did not report to work on March 7, however, nor did he call to say he would be absent. He did call in sick

the following Monday and Tuesday, March 10 and 11. On Wednesday, March 12, Rouse arrived at MARKEM to pick up his check. He handed in a note from the Clinic stating his absences from February 28 through March 14 were due to "acute illness."

On March 19, MARKEM presented Rouse with a written warning due to his excessive absenteeism. The warning noted Rouse's poor attendance record in prior years[2] and that he had missed 12 days of work without medical documentation. Rouse was cautioned not to miss any more work during the next six months without a doctor's note clearly explaining his illness. MARKEM also requested permission to solicit additional information from Rouse's physicians. The warning explicitly stated that Rouse's "failure to comply with any of the conditions of this warning

---

[2] The record notes that Rouse's absentee rate exceeded MARKEM standards in both 1993 and 1994. The notes explaining his absences on the company employment reviews state that Rouse's excessive absentee rate was due to medical reasons ("Had an operation on his knee;" "In 1994, Wink had some problems with his back and it has reoccurred at times."). If so, his absences may have been protected by the FMLA. MARKEM, therefore, could not base its decision to terminate Rouse's employment in whole or in part on his absentee rate during those years. See generally Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1 (1st Cir. 1998); 29 U.S.C. § 2615. The written warning given to Rouse on March 19, 1996, cites his high absentee rate in 1995 and the beginning of 1996, it does not reference his absences in 1993 or 1994.

will result in termination of employment at MARKEM."

Rouse did not come to work on Thursday, April 4, or Friday, April 5. The following Monday, April 8, he came to work with a doctor's note, excusing his absence "due to illness." Rouse then met with MARKEM's human resources manager, Ovid "Ed" Dubois, to review MARKEM's attendance policy and the written warning Rouse received on March 19. Dubois told Rouse that he needed a detailed doctor's note for his absences, indicating that without one he may just assume Rouse was suffering from a hangover. Dubois also provided Rouse with medical releases authorizing MARKEM to obtain information directly from Rouse's doctors. Rouse apparently told Dubois at this meeting that he suffered from Hepatitis C. It is not clear from the record whether Dubois orally informed Rouse of his right to take medical leave under the FMLA at the meeting or otherwise inquired as to Rouse's need to take such leave. It is similarly unclear if Rouse indicated that he may require further absences to deal with his health problems. In his deposition, Dubois stated that he did not recall whether they ever discussed the FMLA.

Rouse met with Dubois again on Tuesday, April 9. Rouse provided a more detailed note signed by nurse Mary Berube, his

primary care physician, stating that his prior absences were due to flu, strep throat, and a "viral syndrome" with vomiting and abdominal pain. Dubois offered Rouse a severance package at that time, suggesting that Rouse leave rather than risk termination. Rouse declined the offer. Dubois then called the Lahey Hitchcock Clinic to inquire further about Rouse's condition and was told by a nurse that Rouse had not given the Clinic a release to discuss his condition. Rouse dropped off the release at the Clinic later that day. Dubois wrote to nurse Berube the following day to seek more information. Berube wrote back that she was unable to discuss Rouse's condition in more detail, as the medical release Rouse signed was not a "total release."

Rouse did not see Berube again after April 9, as Berube referred Rouse to Dr. Teng Beng Go to treat his symptoms, which were believed to be related to his Hepatitis C. Rouse saw Dr. Go on April 17, and provided Dr. Go with a medical release. Dr. Go told Rouse that he would schedule a liver biopsy and possibly start treatment to combat his Hepatitis-related symptoms.

On April 19, Rouse arrived at work, turned in his time card, and told Bruce Descoteaux, the lead person in Rouse's department, that he was going home to bed. Before leaving, he gave

-8-

Descoteaux a pamphlet entitled "Hepatitis C - A common but little known disease" and told him to read it. He did not, however, provide a doctor's note to explain his absence. Although Descoteaux was the "lead person," he was not Rouse's manager. MARKEM's attendance policy required employees to notify their managers when they were to be absent from work.

On April 22, therefore, Dubois met with Rouse in order to terminate his employment at MARKEM. Rouse explained that he was seeking treatment from Dr. Go. Rouse informed Dubois that he was scheduled to have a liver biopsy and blood work. He told Dubois that Dr. Go was authorized to discuss his condition. Dubois said that he would first contact Dr. Go before deciding whether or not to fire Rouse. He then placed Rouse on unpaid leave, pending the outcome of his discussion with Dr. Go.

Dubois directed Sally Steere, MARKEM's nurse, to call Dr. Go's office, and inquire about Rouse's condition. Steere spoke with Amanda Costa, Dr. Go's nurse, and asked that she relay a message to him regarding MARKEM's inquiry. Dr. Go's nurse apparently did so, and reported Dr. Go's opinion back to Steere. Steere never spoke directly to Dr. Go. In a memorandum to Dubois, Steere stated that Rouse was scheduled to undergo an

upper GI series the following day due to his complaints of vomiting spells. She also wrote that "Dr. Go says that he does not know of any medical reason why Mr. Rouse could not be working."

Dubois subsequently met with Rouse. Dubois said that, in light of Dr. Go's conclusion that Rouse could work, Dubois had decided to fire Rouse. Dubois never spoke directly with Dr. Go or his nurse, but relied on the memorandum from nurse Steere. In his deposition, Dr. Go testified that he did not even recall making such a statement, claiming that "I do not believe I ever said that he can go to work or not go to to work." Dr. Go noted that he was a specialist and typically referred inquiries regarding a patient's ability to work back to the primary care physician, in this case nurse Berube. There is no evidence in the record that MARKEM communicated with Berube after April 16, the date on which she answered Dubois' letter of April 10.

MARKEM terminated Rouse's employment on April 23, 1996.

Rouse alleges that MARKEM failed to apprise him of his rights under the FMLA, failed to offer him leave, and terminated him in violation of the Act. Specifically, Rouse invokes § 2615 of the Act, which bars an employer from either interfering with

an employee's exercise of his FMLA rights or discriminating against him for doing so.[3]

## **DISCUSSION**

MARKEM argues that it is entitled to summary judgment because (1) Rouse failed to provide adequate and timely notice of his need for FMLA leave; (2) Rouse failed to provide medical certification of his condition; and (3) Rouse's treating physician indicated that Rouse was not entitled to such leave.[4] I address these arguments in turn.

---

[3] Section 2615 of the FMLA states, in part, that: (a)(1) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
29 U.S.C. § 2615 (West 1999).

[4] As noted above, Rouse has moved for partial summary judgment on the issue of liability. Rouse argues in that motion that MARKEM is estopped from asserting a defense based on Rouse's alleged failure to provide notice or medical certification because MARKEM failed to post FMLA notices or otherwise inform Rouse of his rights under the law. Because I deny Rouse's motion, MARKEM is not estopped from asserting the above-mentioned defenses in the context of its motion for summary judgment (document no. 8).

The FMLA guarantees employees the right to take up to 12 weeks of unpaid leave in a year to confront "a serious health condition that makes the employee unable to perform the functions of the position."  29 U.S.C. § 2612(a)(1)(D).

> The twin purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons."

Hodgens v. General Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998)(quoting 29 U.S.C. § 2601(b)(1),(2)); see also Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1, 10 (1st Cir. 1998).  Following an FMLA leave, the employee is entitled to return to his job, or an equivalent position, without losing any accrued seniority.  See Hodgens, 144 F.3d at 159 (citing 29 U.S.C. § 2614(a)(1); 29 C.F.R. §§ 825.100(c)(1997)).  An employee is also entitled to take "intermittent" leave in order to attend medical appointments or seek necessary treatment.  See id.

An eligible employee's right to FMLA leave is absolute, but it does not come without restrictions or requirements. See Hodgens, 144 F.3d at 159.  Indeed, Congress intended that the FMLA "accomplish its purposes 'in a manner that accommodates the legitimate interests of employers.'"  Id. at 159.

-12-

## 1. The FMLA's notice requirement.

The FMLA requires an employee to provide his employer with reasonable notice of the need to take leave. <u>See, e.g.,</u> 29 U.S.C. § 2612(e)(2); 29 C.F.R. §§ 825.302, 825.303. The employee need not explicitly invoke his FMLA rights to do so. <u>See</u> 29 C.F.R. § 825.303(b). Rather, he must only state that leave is necessary and "[t]he employer will be expected to obtain any additional required information through informal means." <u>Id.</u>

Where the need for leave is foreseeable, an employee is required to provide his employer with "at least 30 days advance notice." 29 C.F.R. § 825.302. Where the need for leave is unforeseeable, the employee must provide notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). In such unforeseeable situations, the employee is expected to provide notice "within no more than two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." <u>Id.</u>

In this case, it is unclear from the record whether Rouse's need for FMLA leave was foreseeable. Although he was diagnosed with Hepatitis C in 1995 and may have carried the virus since

-13-

1974, he has proffered evidence that symptoms associated with the virus can lie dormant for years and then "yo yo." Indeed, it appears that he did not suffer any symptoms until December 1995. Viewing the evidence in the light most favorable to Rouse, I will assume for purposes of Defendant's motion that Rouse's need for leave was unforeseeable.

As such, Rouse would have had to put MARKEM on notice of his need for leave as soon as practicable, or within two working days of learning that he needed FMLA leave. See 29 C.F.R. § 825.303(a). MARKEM has produced evidence that Rouse did not comply with this requirement. Rouse was repeatedly absent from work during the two months leading up to his dismissal. Despite the fact that he was seeking treatment for Hepatitis-related problems during February and March, he apparently did not inform MARKEM of his diagnosis until April 8.

Despite MARKEM's evidence, it is not entitled to summary judgment on the current record. First, Rouse has produced evidence that MARKEM may not have complied with the FMLA's posting and notice requirements. Moreover, even after Rouse informed Dubois that he was undergoing tests related to his Hepatitis C, Dubois apparently did not raise the possibility of

-14-

FMLA leave. Instead, Dubois offered Rouse a severance package, noting that Rouse risked termination if he continued to miss work. Indeed, Rouse's affidavit states that "based on management's response to my on-going illness," he did not believe he was entitled to time off.

Finally, while MARKEM cites cases from other circuits which may support its position, the First Circuit has yet to construe the FMLA's notice provisions. See, e.g., Holmes v. The Boeing Co., 166 F.3d 1221 (10th Cir. 1999); Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973 (5th Cir.), cert. denied, 119 S.Ct. 72 (1998). The cases MARKEM cites are persuasive, but the issue of what constitutes adequate and timely notice to an employer is largely a case-specific factual inquiry. The record before me demonstrates genuine factual disputes which are material to the outcome of this case and which could reasonably be resolved in favor of either party. Cf. Hodgens, 144 F.3d at 172. In the absence of controlling precedent instructing me to do otherwise, therefore, I cannot say as a matter of law that Rouse so utterly failed to comply with the FMLA's notice requirement that MARKEM is entitled to summary judgment.

While the evidence suggests that Rouse was lax in the

exercise of his rights, there is also evidence suggesting that MARKEM did not meet its obligations under the FMLA. Viewing the evidence in the light most favorable to Rouse, I conclude that the evidence does not weigh so heavily in favor of MARKEM that it is entitled to judgment as a matter of law on the grounds that Rouse failed to provide adequate and timely notice of his need for leave. See, e.g., Toro v. Mastex Industries, 32 F.Supp.2d 25, 29-30 (D. Mass. 1999)("there are genuine and material issues of fact with respect to many of the parties' respective rights and obligations under the FMLA and its regulatory scheme"); Watkins v. J&S Oil Co., Inc., 977 F.Supp. 520, 523 (D. Me. 1997), affirmed, 164 F.3d 55 (1st Cir. 1998)("the Court cannot conclude as a matter of law that Plaintiff's actions absolved Defendant of its duties under the FMLA").

## 2. Medical certification of the need for FMLA leave.

Where leave is foreseeable, an employee should provide medical certification of the need for leave before the leave actually begins. See 29 C.F.R. § 825.305(b). Where that is not possible, an employee may be required to provide medical certification "within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's

request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent good faith efforts." 29 C.F.R. § 825.305(b).

Sufficient medical certification should state: (1) the date the condition commenced, (2) its expected duration, (3) the health care provider's knowledge of appropriate medical facts regarding the condition, and (4) a statement that the employee is unable to perform the functions of his position. See 29 U.S.C. § 2613(b). Where an employee seeks intermittent leave under the FMLA, he must also provide information such as the dates he will need to be absent for treatment. See id. at § 2613(b)(5),(6).

Rouse clearly did not provide certification meeting the above requirements. The record indicates, however, that MARKEM never properly informed Rouse of his obligation to provide medical certification, what that certification should include, and the consequences for failing to do so. An employer is required to give the employee written notice of the medical certification requirements and the consequences of not providing adequate information. See C.F.R. §§ 825.301(b)-(c), 825.305(a). Where the information the employee provides is insufficient, the employer must advise the employee and "provide the employee a

reasonable opportunity to cure any such deficiency."  29 C.F.R. §
825.305(d).

Even assuming that Dubois' April 8 request for a "detailed note" was sufficient notice to Rouse of his obligation to provide medical certification, MARKEM was required to allow Rouse 15 days to do so.  If the certification Rouse provided was insufficient, MARKEM was required to so inform Rouse and allow him reasonable time to cure the deficiencies.  Clearly MARKEM failed in this respect, as Rouse was fired on April 23, exactly 15 days after the April 8 meeting.  Following the April 8 meeting, Rouse visited nurse Berube to obtain a more detailed medical excuse, as requested by Dubois.  He also dropped off a signed medical release.  The following day, he gave Dubois nurse Berube's note. There is no evidence in the record that Dubois or any other MARKEM employee informed Rouse that the note he presented on April 9 was insufficient.  Nor is there evidence that MARKEM gave Rouse an opportunity to provide the additional information required by the FMLA.  As such, summary judgment for MARKEM on the ground that Rouse did not provide sufficient medical certification is inappropriate.

### 3. Dr. Go's opinion that Rouse was capable of work.

MARKEM also argues that, even if Rouse properly complied with the notice and medical certification requirements of the FMLA, his own treating physician stated that he was able to work and, therefore, he was not eligible for FMLA leave. I reject this argument.

The record contains conflicting evidence on Dr. Go's opinion. MARKEM contends that Dr. Go stated "he does not know of any medical reason why Mr. Rouse could not be working." This information was apparently relayed from Dr. Go to his nurse, Amanda Costa, to MARKEM's nurse, Sally Steere, and then to Dubois. Dr. Go, however, testified that he does not recall making such a statement. Moreover, he claims that his practice when receiving such inquiries was to refer the question back to the patient's primary care physician, which, in this case, would be nurse Berube. There is no evidence that MARKEM sought, or Rouse provided, more information from Berube after April 16, the date on which she wrote to Dubois indicating that she could only release Rouse's diagnosis. As such, a genuine issue on this material fact remains.

## CONCLUSION

The record before me clearly demonstrates multiple issues of fact which preclude summary judgment in MARKEM's favor. As such, I deny Defendant's motion for summary judgment (document no. 8). Plaintiff's motion for partial summary judgment (document no. 9) is also denied.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

August 22, 1999

cc:  Thomas P. Mullins, Esq.
     Francis Murphy, Esq.
     Jeffrey Howard, Esq.